**NATIONAL ASSOCIATION OF REHABILITATION FACILITIES, INC., et al., Plaintiffs,**

v.

**Richard S. SCHWEIKER, et al., Defendants.**

**Civ. A. No. 82–0494.**

United States District Court, District of Columbia.

Sept. 21, 1982.

Joe W. Fleming, II and Robert S. Hall, Jr., Washington, D.C., for plaintiffs.

Stanley S. Harris, U.S. Atty., Royce C. Lamberth and John D. Bates, Asst. U.S. Attys., Washington, D.C., for defendants.

## MEMORANDUM OF FINDINGS OF FACT AND CONCLUSIONS OF LAW

OBERDORFER, District Judge.

This matter is before the Court on plaintiffs' Motion for a Preliminary Injunction, which has been the subject of extensive briefing and several hearings since it was filed on February 19, 1982.[1] Plaintiffs seek injunctive and declaratory relief, and also apparently seek relief in the form of a *mandamus* against defendant Schweiker. *See Nat'l. Wildlife Federation v. United States,* 626 F.2d 917, 918 n. 1 (D.C.Cir.1980). Plaintiffs, who are recipients of outpatient medical rehabilitation services, providers of those services and professional associations of providers, specifically seek an Order directing defendants to comply with terms of Part B of the Medicare Act of 1965 (as amended), 42 U.S.C. § 1395j–w. *See* 42 U.S.C.A. § 1395k(a)(2)(E) (West Supp.1982). At a final hearing on the motion held July 27, 1982, the parties were given an opportunity to examine witnesses in court, and elected to proceed instead by affidavit evidence. *See* Order of July 8, 1982 ¶ 2.[2] Plaintiffs subsequently filed proposed findings of fact and conclusions of law, together with several proposed orders, and defendants filed responses to plaintiffs' submissions. Based upon the entire record in this action the Court makes the following find-

---

1. An amended complaint for declaratory and injunctive relief filed March 5, 1982, left in place the prayer for preliminary injunctive relief advanced when the action was commenced in February, 1982.

2. There has been no formal discovery in the case.

ings of fact and draws the following conclusions of law.[3]

## FINDINGS OF FACT

1. In December 1980, the Ninety-Sixth Congress passed and the President signed amendments to Part B of the Medicare Act of 1965 ("the Act"). Pub.L. No. 96–499, § 933 ("section 933"), 94 Stat. 2609 *et seq.* (1980). Section 933 amended the Act in a number of respects to include comprehensive outpatient rehabilitation facilities ("CORFs") as "providers of services" under the Act and to permit reimbursement of qualified CORFs for comprehensive outpatient rehabilitation services provided to qualified Medicare subscribers. *See* 42 U.S.C.A. § 1395k(a)(2)(E) (West Supp.1982). Subsection (h) of section 933 established a starting date for CORF benefits in the following terms:

(h) The amendments made by this section shall become effective with respect to a comprehensive outpatient facility's first accounting period which begins on or after July 1, 1981.

Pub.L. No. 96–499, § 933(h), 94 Stat. at 2637 (1980). Defendants have not yet published final regulations designed to implement section 933, although they assert that such regulations are necessary before section 933 benefits can be provided.

2. Plaintiffs are associations that represent rehabilitation facilities and professionals who work in such facilities, individual rehabilitation facilities that claim to meet definitional requirements for eligibility as CORF providers under the Act, and individuals eligible to receive benefits under Part B of the Act. Defendants are the Secretary of the Department of Health and Human Services ("the Secretary") and the Administrator of the Health Care Financing Administration ("HCFA"), who is responsible to the Secretary for administration of benefit programs under the CORF amendments to the Act.

3. Part B of the Medicare program is administered in part by commercial insurance companies, Blue Shield Plans and other carriers (Part B carriers), that act as agents for HCFA. Part B carriers normally process bills from providers and make payments thereof pursuant to section 1842 of the Social Security Act (42 U.S.C. § 1395u).

4. Various rehabilitation facilities claiming to meet the definition of a "comprehensive outpatient rehabilitation facility" in section 933 have sought certification as Medicare providers of services under the authority of section 933 and payment for CORF services rendered to Part B beneficiaries. These requests for reimbursement for provision of CORF services have been denied by Part B carriers because defendants have not issued final regulations or other directives to implement section 933. Other rehabilitation facilities have refrained from seeking certification as CORFs due to the absence of such regulations.

5. Affidavits submitted by plaintiffs indicate that some individuals eligible for Medicare reimbursement and in need of CORF services are foregoing such services because they or their rehabilitation facilities cannot receive payment for such services due to defendants' failure to implement section 933. Other individuals are paying for CORF services out of their own pockets.

6. Plaintiffs' affidavits also indicate that some rehabilitative facilities have suffered severe financial burdens due to, *inter alia,* expenses undertaken (such as the hiring of staff, expansion of facilities, and design of new programs) to prepare to provide CORF services in anticipation of a July 1, 1981, effective date for section 933, and provision of CORF services to eligible Medicare subscribers for which no reimbursement has been forthcoming. As the date for implementation of section 933 has been pushed further and further back, some facilities have had to let go members of their

---

**3.** The most recent filings in the case are a set of affidavits submitted by plaintiffs on August 4, 1982. The shortness of time has not afforded defendants an opportunity to file a response to those affidavits.

professional staff, take out loans at high interest rates, and deny services to eligible individuals unless the individuals can pay for such services themselves.

7. Defendants have reported that if section 933 were being implemented at this time, about 500 facilities would qualify as CORFs and payments to them on behalf of Part B beneficiaries in the fiscal year ending September 30, 1982 would be $13,000,-000. Notice of Proposed Rulemaking, 47 *Fed.Reg.* 20092, 20097 (1982). This figure may be taken as a rough estimate of the cost to CORFs of the failure to implement section 933 during that period.

8. In excess of 28 million people are eligible to receive services under Part B of the Medicare Act (*Budget of the United States Government, Fiscal Year 1982,* Appendix 1–42). While presumably less than this number would seek or qualify for CORF services, this figure demonstrates the large number of persons potentially affected by the failure to implement section 933.

9. Some hospitals provide outpatient rehabilitative services that are currently reimbursable by Medicare. Such hospitals, however, are few in number and are generally located only in urban areas.

10. Section 933 of the Medicare Act authorizes but does not require the Secretary to issue regulations as a means of discharging his responsibility to provide the program of benefits prescribed by the Act. Defendants have chosen in their discretion to issue regulations in order to implement section 933.

11. In its proposed budgets for fiscal years 1982 and 1983, issued in February of each preceding year, the Executive Branch has sought repeal of section 933. *See* Office of Management and Budget, *Budget of the United States Government, Fiscal Year 1982* (Appendix, p. I–K51); OMB, *Budget of the United States Government, Fiscal Year 1982* (Appendix, p. I–K43). Congress, however, has not repealed section 933.

12. In November 1981, the Secretary advised Congress that he believed regulations were "necessary" to implement section 933,

and that he expected to propose such regulations in January, 1982. Letter from Richard S. Schweiker to Congressman Andy Jacobs, Jr. (Nov. 25, 1981) (Plaintiff's Memorandum in Support of Motion for Preliminary Injunction (Feb. 19, 1982), Attachment VII).

13. On February 19, 1982, regulations to implement section 933 still not having been published, plaintiffs instituted this lawsuit.

14. In March 1982, defendants represented to this Court that publication of proposed regulations to implement section 933 was "tentatively scheduled" for April 1982. Affidavit of Marsha Rydstrom, ¶ 2 (Mar. 5, 1982) (Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction (Mar. 8, 1982), Ex. A).

15. Under a Stipulation approved by the Court on March 19, 1982, defendants published a Notice of Proposed Rulemaking for proposed CORF regulations in the *Federal Register* on May 10, 1982. The public comment period on these proposed regulations closed June 9, 1982.

16. Defendants have represented that by August 15, 1982, specifications for final regulations would be prepared by the policy components of the HCFA based on the comments received in response to the Notice of Proposed Rulemaking.

17. Defendants project that in the absence of action by the Court, and barring unforeseen circumstances, final regulations implementing section 933 will be published December 1982. Defendants have refused to guarantee a December 1982 publication date, however. A December 1982 publication of final regulations would be over two years after the statute was enacted and eighteen months after the law's mandated effective date.

## CONCLUSIONS OF LAW

1. Although the parties have not challenged this Court's jurisdiction over the subject matter of this action, this Court has a duty to establish its proper jurisdiction prior to examining the merits of the case. *Mansfield, Coldwater & Lake Michigan Ry.*

*v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884).

2. Contrary to plaintiffs' assertion and defendants' apparent concession, federal question jurisdiction over this action under 28 U.S.C. § 1331 (1976) is somewhat ambiguous. Congress has expressly withheld federal jurisdiction under 28 U.S.C. §§ 1331 and 1346 with regard to claims based on the Medicare statute "to recover on any [Medicare] claim." 42 U.S.C.A. § 1395ii (1976) (incorporating 42 U.S.C. § 405(h) (1976) with regard to actions arising under the Medicare Act).[4] *See Weinberger v. Salfi,* 422 U.S. 749, 756–62, 95 S.Ct. 2457, 2462–65, 45 L.Ed.2d 522 (1975); *Fox v. Harris,* 488 F.Supp. 488, 493 (D.D.C.1980). Our Court of Appeals, however, has recently held that jurisdiction under section 1331 will not be barred by § 405(h) with regard to a substantive Medicare claim when "reimbursement is not its ultimate goal" and "for which no alternative form of judicial review [is] available." *National Association of Home Health Agencies v. Schweiker,* 690 F.2d 932, 938, 941 (D.C.Cir.1982). At this stage of this litigation, plaintiffs do not seek to litigate CORF reimbursement claims. Administrative review of plaintiffs' current claims under 42 U.S.C. §§ 1395ff and 1395oo is therefore unavailable. *See id.,* at 938, 939. Although the hope of reimbursement for CORF services may well have motivated plaintiffs to bring this suit, once CORF regulations are in place plaintiffs' needs may be satisfied without further access to federal court. Absent a direct request for relief in the form of monetary reimbursement, plaintiffs' motivation is irrelevant. *Id.,* at 938–939. Thus the first prong of the *Home Health Agencies* test is met at this time.

The Court concludes below, however, *infra* at ¶ 3, that plaintiffs' present claim properly lies within the Court's jurisdiction as an action in the nature of mandamus, and should be so treated. Thus plaintiffs have an "alternative form of judicial review" available to them at this stage, and it is unnecessary to plunge further into the jurisdictional thicket that has grown up around § 405(h).[5] *See id.,* at 940; *compare Humana of South Carolina v. Califano,* 590 F.2d 1070, 1080 (D.C.Cir.1978) *with Association of American Medical Colleges v. Califano,* 569 F.2d 101, 106–108 (D.C.Cir.1977).

3. This Court does have jurisdiction over the subject matter and parties here as an action in the nature of mandamus under 28 U.S.C. § 1361 (1976).[6] At this point in the litigation, this case is not one claiming reimbursement for costs for Medicare services.[7] Plaintiffs currently seek an order compelling the Secretary to take steps to make section 933 "effective," as required by Congress in section 933(h). Although plaintiffs have prayed for declaratory and injunctive relief, "[a]n action purportedly requesting a mandatory injunction against a federal official is analyzed as one requesting mandamus." *Nat'l. Wildlife Federation v. United States,* 626 F.2d 917,

---

4. 42 U.S.C. § 405(h) states in relevant part that "[n]o action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter."

42 U.S.C. § 1395ii states in relevant part that § 405(h) "shall also apply with respect to this subchapter [Medicare] to the same extent as applicable with respect to subchapter II of this chapter."

5. In the Order that accompanies this Memorandum, the parties are directed to brief further the question of this Court's jurisdiction over the remaining issues, if any, in this case.

6. "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Pub.L. 87–748, § 1, 76 Stat. 744 (1962).

7. To the extent that plaintiffs' complaint may seek a ruling on reimbursement for any CORF services, it would not fall within this Court's jurisdiction, but rather would first have to proceed through the administrative review mechanisms contained in the Medicare statute. 42 U.S.C.A. §§ 1395ff, 1395oo (1974 and West. Supp.1982). *See Pacific Coast Medical Enterprises v. Harris,* 633 F.2d 123, 138 (9th Cir. 1980); *Association of Am. Medical Colleges, supra,* 569 F.2d at 111. *Compare National Association of Home Health Agencies v. Schweiker, supra,* at 938, 939.

918 n. 1 (D.C.Cir.1980). Mandamus jurisdiction under § 1361 is not foreclosed by the plain terms of 42 U.S.C. § 405(h) (specifically barring jurisdiction only under 28 U.S.C. §§ 1331 and 1346), and a court should not interpret a statutory scheme so as to totally foreclose jurisdiction "unless Congress' intent to do so is manifested by 'clear and convincing' evidence." *Califano v. Sanders,* 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977); *accord, National Association of Home Health Agencies v. Schweiker, supra,* at 940. Our Court of Appeals has recognized that § 405(h) does not preclude mandamus jurisdiction in Medicare cases alleging "undue delay or plain departure from statutory procedures," *Association of Am. Medical Colleges, supra,* 569 F.2d at 113, and that mandamus is foreclosed only in cases "in which statutory procedures authorize review of the particular action" at issue. *Id.* at 112. This is consistent with the more general rule that mandamus is proper only in cases of clear illegality when alternative remedies, administrative or judicial, are unavailable. *Id.* at 110–111 n. 80; *Haneke v. Secretary of HEW,* 535 F.2d 1291, 1296 n. 15 (D.C.Cir. 1976).

In the case at hand, the legal duty of defendants is clear and peremptory: Congress has mandated that the CORF statute and benefits *"shall* become effective" as of July 31, 1981. Pub.L. No. 96–499, § 933(h) (emphasis supplied). Congress has twice refused to repeal this command, thereby reinforcing its intent. This duty is clearly owed to plaintiffs here, who claim to be eligible for CORF services and payments or qualified as CORFs. The administrative remedies provided by the Medicare statute cannot be construed to accommodate challenges to the Secretary's failure to implement section 933. *See* 42 U.S.C. § 1395oo (1974 and West.Supp.1982); *Humana, supra,* 590 F.2d at 1081 (remedy under § 1395 *oo* is "confined . . . to disputes over the amount properly reimbursable, [and] is unavailable with respect to procedural contentions"). Judicial remedies other than mandamus are barred by operation of § 405(h). *See* Conclusions of Law, *supra,* ¶ 2.[8] An order directing defendants to comply with their clear statutory duty to implement section 933 forthwith will not interfere with or direct their discretion as to how best to do so, nor is it unreasonable to issue such an order now, 21 months after the CORF statute was passed and 13 months after the date by which Congress decreed it should become effective. This case therefore fits squarely within the "limited circumstances" under which mandamus jurisdiction properly lies in Medicare cases. *Association of Am. Medical Colleges, supra,* 569 F.2d at 113.

4. Plaintiffs in this action may be divided into three categories: (a) Medicare subscribers who have been denied reimbursement for payments they have made for rehabilitative services, due to the lack of CORF regulations; (b) providers of rehabilitative services that claim to qualify as CORFs ("potential CORFs") but have been denied reimbursement for CORF services rendered by them to Medicare beneficiaries; and (c) associations representing either potential CORFs or individual therapists employed by potential CORFs. For convenience, plaintiffs in group (b) will be referred to as "providers" and those in group (c) as "provider associations."[9]

---

**8.** Although some Courts of Appeal have held that the Court of Claims' jurisdiction over certain Medicare claims is not barred by § 405(h), *see e.g., Am. Ass'n. of Councils of Medical Staffs v. Califano,* 575 F.2d 1367, 1373 (5th Cir.1978); *Trinity Memorial H., Etc. v. Assoc. Hosp. Service,* 570 F.2d 660, 667 (7th Cir.1977), the Court of Claims has jurisdiction only over monetary claims against the United States, and cannot grant the sort of declaratory or equitable relief required here. *See United States v.*

*King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).

**9.** Although plaintiffs have provided the Court with affidavits from Medicare subscribers who claim to have foregone needed rehabilitative services due to the lack of Medicare reimbursement under section 933, no such persons are named as plaintiffs in this action. With regard to plaintiffs in groups (a) and (b), defendants have never controverted the allegation that such plaintiffs would qualify as CORFs or for

■■■ 5. Plaintiffs have standing to maintain this action for the following reasons:

(a) Medicare subscribers who would qualify for reimbursement of payment for CORF services are directly injured by the lack of such reimbursement due to defendants' failure to implement section 933. It is irrelevant that such persons might receive reimbursement if they travelled to certain hospitals to receive rehabilitative treatment. Such hospitals are few in number and located only in urban areas. More importantly, by passing section 933, Congress clearly established the right of qualified Medicare subscribers to receive rehabilitative services rendered by qualified CORFs of their own choosing; defendants cannot defeat this right simply by refusing to promulgate implementing regulations. Furthermore, the current out-of-pocket expense for payment of such services constitutes an injury in fact to these individual plaintiffs. Defendants have never represented to this Court that qualified subscribers will be reimbursed for their past CORF expenses once valid regulations are promulgated. In addition, as the plaintiffs' affidavits amply demonstrate, there is a distinct possibility that patients who need CORF services will find it too financially burdensome to continue paying for such services absent reimbursement, and will consequently discontinue the services. Simply put, were it not for defendants' failure to implement section 933, qualified Medicare subscribers would not have suffered this financial and possibly medical burden after July 1, 1981. The requisite injury and adversity with regard to the individual plaintiffs is clear. Moreover, it is likely that the promulgation of CORF regulations will lead to the relief plaintiffs seek, i.e. reimbursement for CORF services. Plaintiffs allege that they are and will be eligible for CORF

CORF services if Section 933 were implemented.

10. While the monetary injury to the provider plaintiffs is sufficient to confer standing here, it does not necessarily give this Court jurisdiction to hear plaintiffs' claims for reimbursement. *See* Conclusions of Law, *supra,* ¶ 3. Standing

reimbursement, and defendants have not challenged that assertion.

(b) Expenses incurred and unreimbursed services provided by potential CORFs in reliance on a July 1, 1981, starting date for CORF benefits also constitute injury and create adversity sufficient to confer standing on CORF providers. While the relief that these plaintiffs seek here, i.e. promulgation of CORF regulations, may not inevitably redress these injuries, it is an absolutely necessary first step. *Cf. Arlington Heights v. Metropolitan Housing Corp.,* 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1979) (challenged action "stands as an absolute barrier" to plaintiffs' purposes). All provider plaintiffs may not ultimately be certified as CORFs, but *no* provider can be so certified until regulations are in place. Likewise, the Secretary may or may not provide in his final CORF regulations that CORF services rendered since July 1, 1981, are reimbursable, but such regulations must be promulgated before such a decision can be further examined. It is indisputable that qualified CORFs will receive payments once regulations are in place, and that, even if such regulations do not encompass payment for prior services, the sooner regulations are in place the sooner unreimbursed CORF expenses will terminate. Defendants have estimated that 500 rehabilitative facilities will qualify as CORFs, and that each stands to gain an average of $40,000 in revenues by 1985. 47 *Fed.Reg.* 20097–98. Thus the provider plaintiffs have a "sufficient stake in the outcome of the controversy," *Bryant v. Yellen,* 447 U.S. 352, 368, 100 S.Ct. 2232, 2241, 65 L.Ed.2d 184 (1980), to have standing here.[10] In addition, many of the provider plaintiffs are non-profit organizations. Their specific plans and programs to provide CORF services to patients who are in need coupled with the providers' medical interest in providing such services

and federal jurisdiction are separate inquiries; although plaintiffs have standing to challenge the Secretary here, this Court's jurisdiction at this time extends only to the issue proper in mandamus, i.e. the failure to carry out the clear statutory duty to implement section 933.

at low cost to Medicare patients constitute the type of specific non-economic concern that is cognizable in the standing inquiry. *See Arlington Heights, supra,* 429 U.S. at 263, 97 S.Ct. at 562.

(c) Finally, the provider associations here have "associational standing" under the doctrine outlined in *Hunt v. Washington Apple Advertising Comm'n.,* 432 U.S. 333, 342–43, 97 S.Ct. 2434, 2440–41, 53 L.Ed.2d 383 (1977) and *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). The members of these associations, who are providers and individual professional rehabilitative therapists, would have standing to sue here in their own right. The Court has already so held with regard to providers, *see* Conclusions of Law, *supra,* ¶ 5(b); and rehabilitative therapists whose jobs are threatened by the lack of CORF reimbursement, *see* Gramling Affidavit ¶ 13, Plaintiffs' Supplemental Memorandum (July 20, 1982) (Attachment V) clearly could be plaintiffs in this action. The interests that the associations assert here are "germane to the organization[s'] purpose," *Hunt, supra,* 432 U.S. at 343, 97 S.Ct. at 2441, insofar as CORF regulations would inure to the benefit of the association's members. And the claim asserted and relief requested, i.e. an order requiring the defendants to implement section 933, do not *require* participation of individual members, although the Court has found the participation by such members in this litigation helpful.[11]

11. Plaintiff associations describe themselves as "membership organizations." Complaint, ¶¶ 4, 6. This implies that the members pay dues to sustain the associations; if this is so, plaintiff associations may also have a personal financial interest in obtaining CORF regulations that would boost the revenues of its members. *Cf. Hunt, supra,* 432 U.S. at 345, 97 S.Ct. at 2442.

12. Plaintiffs' proof must be considered with regard to four factors: (1) likelihood of success on the merits; (2) irreparable injury; (3) substantial harm to other parties; and (4) the public interest. *Washington Metropolitan Area, Etc. v. Holiday Tours,* 559 F.2d 841, 842 (D.C. Cir.1977); *Virginia Petroleum Jobbers Ass'n. v. Federal Power Commission,* 259 F.2d 921, 925 (D.C.Cir.1958).

6. The standards for preliminary injunctive relief are familiar in this Circuit.[12] When, however, plaintiffs seek a mandatory injunction (that is, preliminary relief that has the effect of altering status quo rather than maintaining it), plaintiffs should be held to a higher standard. *See Doe v. New York University,* 666 F.2d 761, 773 (2d Cir.1981) (relief altering status quo "not favored unless the facts and law clearly support the moving party"); *Martinez v. Mathews,* 544 F.2d 1233, 1243 (5th Cir.1976) (same). In our Circuit, this higher standard is expressed by characterizing the action as one for mandamus, *Nat'l. Wildlife Federation, supra,* 626 F.2d at 918 n. 1, and applying the stringent standard discussed in Conclusions of Law, *supra,* ¶ 3. These high standards for relief have been met by plaintiffs here, to the extent that relief is granted in the accompanying Order.

7. As noted above, Congress left no doubt or discretion as to when section 933 and its consequent benefits were to be effective. Congress commanded a specific effective date, determinable mechanically and with mathematical precision: any CORF's "first accounting period which begins on or after July 1, 1981." Pub.L. No. 96–499, § 933(h). The Secretary certainly has discretion with regard to the method of implementation and the content of regulations if published regulation is the method of implementation chosen.[13] But that dis-

13. In some cases, executive officers may even have some discretion with regard to when regulations will be published, so long as any delay is not unreasonable nor taken in bad faith. *See National Congress of Hispanic Am. Citizens v. Marshall,* 626 F.2d 882 (D.C.Cir.1980); *National Congress of Hispanic Am. Citizens v. Usery,* 554 F.2d 1196 (D.C.Cir.1977). In the *National Congress* cases, the Secretary of Labor failed to adhere to a statutory timetable for the promulgation of final safety and health standards. Our Court of Appeals held that this was not unlawful, in light of the broad statutory and traditional discretion granted the Secretary in the area of occupational health and safety, and in light of the Secretary's rational and good faith establishment of priorities for such standards. In contrast, defendants here have not pointed to any statutory authority for their

cretion does not permit the substitution of an effective date for section 933 different from that specified by Congress. Thus the law is clear and plaintiffs appear likely if not certain to succeed on this point. *Cf. Nat'l. Council of Senior Citizens v. Schweiker,* No. 81–2462, slip op. at 4–7 (D.D.C. Oct. 23, 1981).

8. Even if the regulations eventually promulgated by defendants allow reimbursements for CORF services rendered since July 1, 1981, a condition that defendants have refused to guarantee thus far in the litigation, at least some of the plaintiffs' injuries in the interim will be irreparable.[14] Plaintiffs' affidavits demonstrate that individual Medicare beneficiaries have gone into debt or foregone needed services; therapists have lost their jobs; and facilities have cut back their services, incurred operating deficits and gone into debt, all as a result of the continuing lack of CORF reimbursement. Putting aside the obvious loss of use of the money involved, it is clear that retroactive reimbursement will not restore lost jobs, compensate for foregone rehabilitative treatment, or repay the high interest on loans. Each day that CORF benefits remain unavailable due to defendants' breach of statutory duty increases the current financial drain on plaintiffs and intensifies the number and nature of irreparable injuries to plaintiffs.

9. No harm to other parties is apparent if plaintiffs are accorded relief to the extent of requiring that defendants treat the proposed regulations proposed on May 10, 1982, as final if they have not published a new set of final regulations by December 15, 1982. This latter date is not one selected arbitrarily by the Court. It was suggested by defendants. Their suggestion necessarily implies that publication of final regulations by that date is feasible and not unreasonably burdensome. Common sense and the record before the Court indicate that final regulations conveniently could and should have been published much earlier.

10. Furthermore such relief would be in aid of the public interest as defined by Congress: making section 933 "effective." This Court and the Secretary have a duty to honor Congress' determination of the public interest as expressed through legislation. *See Nat'l. Council of Senior Citizens, supra,* slip op. at 9.

11. Finally, the ordered relief will not interfere with the Secretary's discretionary decisions, but will only effect his non-discretionary ministerial duty to implement section 933. Defendants in their discretion maintain that they will publish final regulations by December, 1982, in which case this Court's injunction will have no visible effect.[15] In the event that defendants do not meet their self-imposed deadline, the proposed regulations will go into effect only until defendants publish final regulations, which will automatically replace the proposed regulations upon publication. Defendants' discretion is thus preserved at all

---

delay, and none has been discovered by the Court, with regard to section 933. *Compare id.,* 626 F.2d at 884; 554 F.2d at 1199–1200. Furthermore, in counterpoise to the statute at issue in *National Congress,* Congress in Section 933 has itself set the priority for defendants; their discretion runs only to the method of implementation of Section 933's statutory command. Finally the lengthy time of delay (18 months by December 1, 1982) and intimations of less than energetic good faith (the regulatory effort lay dormant while the executive twice sought repeal of section 933), well distinguish this case from the *National Congress* decisions. Even if the Secretary's discretion extends to some delay in publishing CORF regulations, that discretion has not been reasonably exercised in this case.

14. Congress did not specify the meaning of "effective" in section 933(h). Defendants contend, somewhat impenetrably, that they do not contest the "effective date" of section 933, and that their proposed regulations are designed to "implement—not delay" the statute. The proposed regulations, however, do not provide for reimbursement of CORF services rendered since July 1, 1981. Whether the final regulations must so provide in order to make section 933 "effective" and whether this Court may properly decide that issue in this litigation are issues that remain to be decided. *See* the Order that accompanies this Memorandum.

15. The Court believes, however, that its injunction will spur defendants to meet their avowed December, 1982, deadline. Its order is therefore not an empty use of its equitable power.

times, while further irreparable injury to plaintiffs will be prevented after December 15, 1982.

12. Accordingly, an Order accompanies this Memorandum, granting the plaintiffs preliminary injunctive relief in the form of mandamus, and requesting that the parties brief the remaining issues in this case.

## ORDER

This matter comes before the Court on plaintiffs' Motion for a Preliminary Injunction. Plaintiffs seek an order requiring defendants to implement Section 933 of Pub.L. 96–499, 94 Stat. 2609 (1980). That section amends Part B of the Medicare Act to include comprehensive outpatient rehabilitation facilities ("CORFs") as providers of services reimbursable under the Act. Plaintiffs specifically request this Court to order defendants to publish final CORF regulations, making Section 933 "effective" as required by Congress in Section 933(h). Upon consideration of the parties' arguments and memoranda, and the entire record, it is this 21st day of September, 1982, hereby

ORDERED: that plaintiffs' Motion for a Preliminary Injunction be treated as an action in the nature of mandamus, and that, as such, it should be and is GRANTED; and it is further

ORDERED: that the Secretary shall consider and cause the regulations published in proposed form at 47 *Fed.Reg.* 20091–20104 (May 10, 1982) to be effective as interim final regulations for all purposes as of December 15, 1982, with respect to any comprehensive outpatient rehabilitation services performed or received on or after that date, unless final effective regulations (hereinafter referred to as CORF regulations) to implement section 933 of the Omnibus Reconciliation Act of 1980 are issued by defendants on or before that date; and it is further

ORDERED: that payments made to comprehensive outpatient rehabilitation facilities on behalf of beneficiaries under Part B of the Medicare Act during any period when the proposed regulations as they appeared in the Federal Register of May 10, 1982, are in effect as final regulations pursuant to this Order shall not be subject to recovery or reduction because of a subsequent change in such regulations; and it is further

ORDERED: that upon the date of publication of final CORF regulations by defendants, such final regulations shall, unless otherwise ordered, supercede prospectively any regulations in effect pursuant to this Order; and it is further

ORDERED: that defendants shall promptly notify all Medicare Part B carriers and state agencies performing certification functions under the Medicare Act of the existence and substance of this Order; and it is further

ORDERED: that the parties shall submit simultaneous briefs and responses according to the schedule below regarding the following issues:

(a) whether section 933(h) of the Omnibus Reconciliation Act of 1980 makes the Secretary liable for payment or reimbursement for comprehensive outpatient rehabilitation services rendered by facilities that would have qualified as comprehensive outpatient rehabilitation facilities (potential CORFs) if final CORF regulations had been in effect as of July 1, 1981, to persons who would have been eligible for payment for such services under Part B of the Medicare Act, with regard to services rendered after July 1, 1981, for the accounting periods of such potential CORFs that began on or after July 1, 1981. (For convenience this issue will be referred to as the "retroactive payments" issue);

(b) whether this Court has jurisdiction to consider the retroactive payments issue;

(c) whether the retroactive payments issue is ripe for adjudication; and

(d) any other issues necessary for the final disposition of this case.

Briefing Schedule:

Simultaneous Briefs: on or before October 12, 1982.

Simultaneous Responses: on or before October 26, 1982.

So ordered.