**NATIONAL ASSOCIATION OF REHA-BILITATION FACILITIES, INC., et al., Plaintiffs,**

v.

**Richard S. SCHWEIKER, et al., Defendants.**

**Civ. A. No. 82–0494.**

United States District Court, District of Columbia.

Feb. 17, 1983.

Joe W. Fleming, II, Robert S. Hall, Jr., Washington, D.C., for plaintiffs.

John D. Bates, Asst. U.S. Atty., Washington, D.C., for defendants.

### MEMORANDUM GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

OBERDORFER, District Judge.

In a Memorandum and Order filed September 21, 1982, the Court granted to plaintiffs a preliminary injunction mandating that if defendants did not publish certain final regulations by December 15, 1982 (as they planned), proposed regulations that they had published on May 10, 1982, would come into force as interim final regulations for all purposes on December 15, 1982. *National Ass'n of Rehabilitation Facilities v.*

*Schweiker,* 550 F.Supp. 357 (D.D.C.1982) (hereinafter "*NARF*"). The Court reserved for the merits the so-called "retroactive payments issue" which can now be defined as a question of whether the statute requires defendants to provide for the processing and payment of claims for reimbursement for comprehensive outpatient rehabilitation services provided by qualified facilities between July 1, 1981, and the time when CORF regulations were applied. On December 15, 1982, the Secretary issued final CORF regulations that were a variation of the proposed regulations. 42 *Fed. Reg.* 56282 (Dec. 15, 1982). These final regulations do not provide for reimbursement to any facility on account of services rendered between July 1, 1981 and the date after December 15, 1982, by which the facility is inspected and certified pursuant to the regulations.

The parties have now briefed and argued this so-called retroactivity question.* The point of departure for their arguments and the Court's decision is contained in the amendments to the Medicare Act enacted by Congress in December 1980 ("CORF Amendments") that added comprehensive outpatient rehabilitation facilities (CORFs) to the category of facilities previously entitled to government reimbursement for medical services rendered. Section 933 of the CORF Amendments provided an effective date in these terms:

> The amendments made by this section shall become effective with respect to a comprehensive facility's first accounting period which begins on or after July 1, 1981.

In earlier phases of the litigation the Court recognized the Secretary's prerogative to use the rulemaking process he had chosen to determine in the first instance how to carry out the provisions of the CORF Amendments with respect to the effective date. The final regulations issued on December 15, 1982, and their accompanying discussion evidence the defendants'

determination that "the regulations are effective on publication," and not as of July 1, 1981. 47 *Fed.Reg.* at 56282. According to the discussion, eight persons who commented on the proposed regulations had recommended that the final "regulations be effective on July 1, 1981, the statutory effective date." *Id.* The defendants' response was that:

> ... facilities cannot be reimbursed for CORF services until they apply for participation, are surveyed and are found to be in compliance with the conditions of participation. It would be *impossible* for a survey to determine that a facility would have been in compliance on July 1, 1981 with the conditions established by these final regulations.

*Id.* (emphasis supplied).

Other provisions of the final regulations provide, among other things, for on-site inspection of each facility by the defendants' staff as a requisite to certification of each qualifying facility. Only after defendants complete that inspection process does a facility become eligible for CORF payments. Such payments would not begin until after that date, and would not cover services provided prior to that date. There is no provision for interest from the date of certification, or from December 15, 1982, when the regulations were issued, or from July 1, 1981. Thus, the defendants have made the Act effective, in terms of eligibility for payment, on different dates for different facilities, none of which is either December 15, 1982 when the regulations were promulgated, or July 1, 1981, the date which Congress stated in December 1980 would be the effective date.

Plaintiffs' challenge to defendants' decision on the effective date is based on what plaintiffs claim to be the plain meaning of the December 1980 statute, to the effect that when Congress specified July 1, 1981, as the effective date, it meant that the program of services and benefits added to

---

* Plaintiffs prefer to describe the issue not as one of "retroactivity," but as whether defendant has an obligation "to implement § 933 *prospectively* from its effective date." Plaintiffs' Memorandum (Oct. 12, 1982), at 1 n. 1. The term "retroactive payments" is used here for ease of reference alone, and is not intended to imply any substantive legal conclusions.

Medicare by the CORF Amendments should become available in a calendar quarter falling on or about that date and be available uniformly throughout the United States. *Cf. United States v. Estate of Donnelly,* 397 U.S. 286, 295, 90 S.Ct. 1033, 1038, 25 L.Ed.2d 312 (1970).

Plaintiffs refer to the pre-existing provisions of the Medicare Act which entitle individual participants to the benefit of payments for enumerated medical services, one of which, as of July 1, 1981, was comprehensive outpatient rehabilitation facility services. 42 U.S.C. § 1395k(a)(2)(E). Plaintiffs argue that no provision of the law relieved defendant from an obligation to make such payments. *See* 42 U.S.C. § 1395*l*. Plaintiffs request the Court to focus on the provisions of the statute which, they claim, merely authorize the Secretary to "prescribe such regulations as may be necessary to carry out the administration of the insurance programs under this title," to define "other qualified professional personnel" as that term is used in the statute, or to prescribe standards for a utilization plan. According to plaintiffs, none of these statutory provisions for exercise of the defendants' rulemaking power authorized them to defer benefits or to preclude payment or reimbursement for services to which individuals are entitled under the Act. Plaintiffs refer to this Court's observations made in ruling on their preliminary injunction motion that Congress intended the December 1980 Act to become effective on July 1, 1981. *NARF, supra,* 550 F.Supp. at 365–66, ¶ 7.

Plaintiffs challenge the assertion in the preamble to defendants' final regulations that it is "impossible" to determine after the fact whether a facility was entitled to payment for services rendered before the facility is certified as in compliance with the December 15, 1982 regulations. 47 *Fed. Reg.* 56281, 56282. According to plaintiffs, the claim of impossibility "ignores the fact that a primary function of courts, administrators and other adjudicatory bodies is to make findings about what the facts were at points in time in the past." Plaintiffs' Supplemental Memorandum (Dec. 15, 1982), at

1. Plaintiffs point out that the statute itself, which has been available to defendants since December 1980, provides definitions for CORFs, CORF services, and the rate of payment for CORF services. *See* 42 U.S.C. § 1395x & 1395*l* (Supp. V 1981).

Addressing the Court's jurisdiction, plaintiffs contend that the December 1980 Act left no discretion to defendants with respect to when it became effective, so that mandamus under 28 U.S.C. § 1361 is in order, unaffected by limitations imposed on court jurisdiction by 42 U.S.C. § 1395. In this respect, plaintiffs argue that the question in this litigation is not whether defendants owe money, or how much they owe. The question, they argue, is whether defendants violated or failed to perform a statutory duty when they adopted a regulation that precludes payments as of the date Congress selected. Plaintiffs maintain that they do not seek an order that defendants pay any person or entity, but rather an order that defendants put in place under Medicare the "scheme of benefits" mandated by Congress in December 1980 to be effective July 1, 1981.

In challenging jurisdiction, defendants rely primarily on the provisions of the Medicare Act, as applied in *United States v. Erika,* 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), that preclude judicial review of Medicare payment and reimbursement decisions made by the Secretary. 42 U.S.C. § 1395f. They contend that Congress limited a facility initially refused reimbursement to a " 'fair hearing by the carrier' " with no access to a court for redetermination. 102 S.Ct. at 1653. They equate the plaintiffs' stance here to that of a facility seeking redetermination of a denial of a reimbursement claim. According to defendants "[t]he pivotal fact in *Erika,* equally present in this case, is that the judicial determination would necessarily cause Part B money—in whatever amount—to transfer from the Secretary to the facility." Defendants' Supplemental Memorandum (Oct. 12, 1982), at 4. As a corollary of the argument about jurisdiction, *vel non,* the defendants claim that

even if *Erika* did not completely foreclose jurisdiction here, exercise of it now is premature because plaintiffs have failed to exhaust the administrative appeals procedure provided for facilities seeking reimbursement.

Defendants also discuss at some length the provisions of the Administrative Procedure Act that regulations should have prospective effect unless "otherwise provided by the agency for good cause found." 5 U.S.C. § 553(d)(3). According to defendants, regulations are normally prospective, and the only reviewable decision would be one finding good cause to make the regulations retroactive. According to defendants a decision *not* to make regulations retroactive is *not* reviewable. In any event, say defendants, such an exercise of discretion, as distinguished from performance of a ministerial function is not reviewable by mandamus.

Finally, defendants address the "merits" of the decision to apply the regulations prospectively. They quote the Supreme Court's admonition that:

> [R]etroactivity must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles.

*SEC v. Chenery Corp.,* 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947). Citing *Citizens to Save Spencer City v. EPA,* 600 F.2d 844, 881 (D.C.Cir.1979), defendants claim that this is a decision about whether retroactivity is "reasonable." According to defendants the "ill effects of retroactivity would clearly support as reasonable" the Secretary's decision not to make the CORF regulations effective as of July 1, 1981. Defendants' Supplemental Memorandum, at 11. Defendants urge the Court to balance "*Congress*' intent that the CORF program be effective July 1, 1981," against the *defendants'* determination that "statutory and programmatic concerns are better served by not making reimbursement retroactive to July 1, 1981." Defendants' Supplemental Memorandum, at 12 (emphasis supplied). In support of this last contention defendants point to the administrative scheme which makes certification a requisite to payment, and an on-site inspection of a facility requisite to its certification. Defendants' key contention relevant to the retroactivity issue is that investigation of past facility records would not provide "an accurate portrayal of all relevant conditions on prior dates," and that an attempt to do so would be "purely speculative." *Id.* at 13. Defendants support this conclusion with an official affidavit detailing numerous facts that it is claimed would be more difficult to ascertain and verify by reconstruction of past events than from contemporaneous observation by an inspector.

Finally, defendants argue that plaintiffs should be able to obtain reimbursement "for most CORF-type services through other Medicare programs," *id.* at 17–18, and that even if plaintiffs lose reimbursement for providing CORF services from July 1, 1981 forward, they have failed to show that these losses would jeopardize their "financial viability." *Id.* at 18. Plaintiffs have contested both of these arguments; their resolution is unnecessary to the decision that follows.

In its Memorandum of September 21, 1982, the Court anticipated and essentially ruled on the jurisdictional questions now raised by defendants on the authority of *United States v. Erika, supra. NARF, supra,* 550 F.Supp. at 362–63; *see National Ass'n of Home Health Agencies v. Schweiker,* 690 F.2d 932 (D.C.Cir.1982); *Ass'n of American Medical Colleges v. Califano,* 569 F.2d 101 (D.C.Cir.1977). The Court is still persuaded that plaintiffs have the better of the argument. As the Memorandum of September 21, 1982, emphasized in another context, this is not a decision on a claim for payment for given service. 550 F.Supp. at 362. The Court is not asked to determine that the Secretary is liable for any payment to any facility in particular. The issue is whether the Secretary may preclude consideration of eligibility for reimbursement for CORF services rendered after July 1981, a date specified by Congress, merely because the Secretary failed to provide implementing regulations until over 17 months after

that date. The Court is persuaded that Congress's clear intent overrides the defendant's "statutory and programmatic concerns" and requires a decision for plaintiffs on this issue.

A requirement that defendants honor their responsibilities under the Act as of July 1, 1981, does not trespass on the defendants' discretion under the Administrative Procedure Act to determine when there is good cause for retroactive application of the regulations issued December 15, 1982. As the Memorandum of September 21, 1982 noted:

> Section 933 of the Medicare Act authorizes but does not require the Secretary to issue regulations as a means of discharging his responsibility .... Defendants have chosen in their discretion to issue regulations in order to implement section 933.

550 F.Supp. at 361, ¶ 10. Defendants had discretion to choose the regulatory route; they do not have discretion to choose the statute's effective date.

Defendants' argument that plaintiffs have failed to exhaust administrative remedies assumes that plaintiffs assert and the Court is ruling on a particular reimbursement claim. Defendants' Supplemental Memorandum, at 7. This is erroneous and the argument is therefore misplaced.

Before defendants issued final CORF regulations, they argued cogently that it would be inappropriate and premature for the Court to rule on the "retroactive payments" issue at that time. Defendants' Supplemental Memorandum, at 8. Defendants correctly point out that a decision by the Secretary to make the regulations retroactive would have mooted plaintiffs' claims on the issue. But a decision in the opposite direction does not have an identical mooting effect. The regulations have now issued and they make no provision for retroactivity. The Court deferred at the Secretary's urging, but cannot find that the issue is moot merely in light of that deferral.

The Court originally framed and the parties briefed the retroactivity issue as a question of whether the Secretary is liable for reimbursement for CORF services as if the final regulations were in place since July 1, 1981. Further consideration of the statutory scheme as illuminated by briefs and arguments persuades the Court that Congress did not intend to license the Secretary to delay the eligibility of facilities to receive reimbursement for any period consumed by the Secretary to process, issue and implement the regulations. Two years elapsed between Congress's authorization of reimbursement for CORF facilities and the issuance of regulations. More weeks or months will elapse before those regulations result in certification and actual payments. It may be that if defendants had begun in December 1980 to prepare regulations, worked steadily on the project and found it difficult to accomplish, in light of other priorities, Congress would have been receptive to an extension of the effective date. Instead, defendants gave priority to unsuccessful efforts to persuade Congress to repeal the authorization to reimburse for CORF services. The arguments which they now address to this Court as reasons not to honor Congress's intention to make such reimbursements beginning on or about July 1, 1981, should have been addressed to those responsible for deferring development of regulations until the repeal effort had run its course, or to Congress. Before the Court the prevailing consideration is and must be Congress's clear command that the CORF statute be effective in the first accounting period of qualified facilities after July 1, 1981. Such construction of the statute is for the Court. *See, e.g., Covelo Indian Community v. Watt,* No. 82–2377 (D.C.Cir. Dec. 21, 1982). Individuals have already received services for which payment would be available if the defendants had used the time between December 1980 and July 1, 1981, to make the CORF Amendments fully operational. Facilities that have already provided the services, however, have not been reimbursed. The plain language of the statute requires the processing of reimbursement claims of facilities which can establish now that they were eligible for CORF reimbursement af-

ter July 1, 1981, on the basis of whatever standards were reasonably known or ascertainable by them at the time they rendered the allegedly reimbursable services.

Defendants would have a better case for their interpretation of the statute if Congress had merely said that it would be effective July 1, 1981. Congress sharpened its command, however, by its reference to the "first accounting period" of each qualified facility after that date. There is a clear implication that this reference to a particular accounting period was a signal that payments would be made for that period, irrespective of whether the information required to verify eligibility for that payment was gathered before or after the reimbursable services were rendered. If Congress had intended or expected administrative activity to delay actual implementation of the CORF reimbursement scheme, it knew how to provide for that and could have done so. *Compare Antone v. Block,* 661 F.2d 230, 231 (D.C.Cir.1981).

Defendants justifiably speculate that it may be somewhat more difficult to ascertain and verify facts as to eligibility after the services were rendered than before they were rendered. But to say, as defendants do, that the former task is "impossible," is to grossly overstate the case. Every court and every administrative agency make initial fact determinations on the basis of documentary and testimonial evidence which reconstructs past events. The Internal Revenue Service, for example, assesses tax deficiencies and pays tax refunds on the basis of its agents' after-the-fact reconstruction of events of years past. In the area of disability payments, defendants themselves or their agents determine the facts of events past.

There might be good administrative reasons for deferring payment until after regulations are in place and applied by on-site inspections. In the absence of the "effective date" command of Congress, those considerations would have disposed of this case long ago. But Congress *has* spoken. The accompanying Order therefore grants plaintiffs' motion for summary judgment. It declares that defendants shall facilitate the processing of applications for CORF payments or reimbursements from facilities that can demonstrate, by reconstruction of their past services, that they are eligible for CORF reimbursement for services rendered after their first accounting period that began after July 1, 1981. Such applications should be evaluated under the standards in place and knowable by the facility at the time it rendered the services. Such standards might include standards of health and safety that all Medicare facilities must meet, or other requirements generally known to providers in the Medicare field. They would also include requirements specified by Congress in the 1980 CORF Amendments or in their legislative history. They would not, however, include requirements found only in defendants' final regulations of December 15, 1982, or otherwise not knowable by facilities on or before that date. Defendants also may not interfere with the processing of such applications, or cause payment otherwise due to a qualified facility to be refused, because of a facility's non-compliance with standards that could not reasonably have been known to it at the time services were rendered. Otherwise, the Court does not intend to affect defendants' normal reimbursement application process.

Before framing the accompanying Order the Court invited the parties to submit proposed orders. Defendants' proposal was to issue an interim order, effective finally after 90 days, during which time defendants would gather information for a report of any difficulties that defendants might encounter in determining eligibility of facilities for reimbursement of past services. The Court has refused this proposal because, for example, there are established avenues for relief on the basis of newly discovered evidence. *See* Fed.R.Civ.P. 60(b). Also, the Court preferred not to encourage defendants to divert their attention from complying with the statute to efforts to retry this case 90 days hence. The accompanying Order does, however, retain jurisdiction in this Court to entertain proposals to modify the Order upon a dem-

onstration that the modification would facilitate or simplify performance of defendants' duties under the statute.

### ORDER

For reasons stated in the accompanying Memorandum, it is this 17th day of February 1983, hereby

ORDERED, ADJUDGED and DECREED: that the plaintiffs' motion for summary judgment should be and is hereby GRANTED; and it is further

ADJUDGED and DECLARED: that defendants' obligations to reimburse each "comprehensive outpatient rehabilitation facility" for "comprehensive outpatient rehabilitation facility service" (as both such terms are defined in § 1861(cc) of the Social Security Act (42 U.S.C. § 1395x)), provided to qualified Part B medicare beneficiaries pursuant to the Medicare Act of 1965, as amended by Pub.L. No. 96–499, § 933, were intended by Congress to be and hereby are effective with respect to each such facility's first accounting period which began on or after July 1, 1981; and it is further

ADJUDGED and DECLARED: that issuance of interim or final regulations is not a predicate to those obligations; and it is further

ORDERED, ADJUDGED, and DECREED: that defendants shall facilitate the processing of applications for payment or reimbursement due to such a facility for any CORF services rendered by it during the period between its first accounting period after July 1, 1981, and the date of certification of the facility pursuant to defendants' regulations published on December 15, 1982 (or the date of application for certification if such a facility provided CORF services but is subsequently not certified), and shall not interfere with the processing of such applications or refuse reimbursement or payment otherwise due to such a facility because of that facility's failure to comply with some provision of those regulations, the substance of which does not appear in the statute or relevant legislative history, or about which the facility could

not otherwise have reasonably been on notice; and it is further

ORDERED, ADJUDGED and DECREED: that jurisdiction is retained to interpret, modify, or enforce this Order.