**REHABILITATION ASSOCIATION OF VIRGINIA, INC., Plaintiff,**

v.

**Bruce U. KOZLOWSKI, as Director of Virginia Department of Medical Assistance Services, and Donna E. Shalala, as Secretary of the United States Department of Health and Human Services, Defendants.**

**No. 3:93CV402.**

United States District Court,
E.D. Virginia,
Richmond Division.

Nov. 22, 1993.

Alexander Macdonald Macaulay, David Gant Shuford, Mays & Valentine, Richmond, VA, Peter F. Nadel, Rosenman & Colin, New York City, for Rehabilitation Ass'n of Virginia, Inc.

Sharon Maitland Moon, Pamela Malone Reed, Office of Atty. Gen., Richmond, VA, for Bruce U. Kozlowski.

Robert William Jaspen, U.S. Atty.'s Office, Richmond, VA, Carol Federghi, Dept. of Justice, Civ. Div., Washington, DC, for Donna E. Shalala.

## MEMORANDUM

MERHIGE, District Judge.

This matter came before the Court on October 18, 1993 on cross motions for summary judgment pursuant to Federal Rule 56, and defendants' motion to dismiss under Federal Rule 12(b). Plaintiff Rehabilitation Association of Virginia ("the Association")[1]

---

1. Plaintiff Rehabilitation Association of Virginia, Inc. is an association of rehabilitation agencies with its principal place of business in Glen Allen, Virginia. At all times relevant to this action, members of the plaintiff Association provided

brought this action against Bruce U. Kozlowski, Director of the Virginia Department of Medical Assistance Services, ("the Director") and Donna E. Shalala, Secretary of the United States Department of Health and Human Services, ("the Secretary") challenging certain statutes pertaining to the Commonwealth's Medicaid State Plan as violative of the federal Medicare and Medicaid Acts.[2] The parties agreed to dispense with the nonjury trial scheduled for November 5, 1993 and submit the matter for final disposition on the instant motions.

### Background

In 1988, the Virginia General Assembly adopted legislation and a State Medicaid Plan amendment which altered the billing procedures for Medicaid services to Medicaid patients. These enactments, and their legality under the Federal Medicare and Medicaid Acts, are the basis for the instant action. Plaintiff contends that Virginia Plan Amendment 88–08[3] unlawfully prohibits therapy providers from submitting separate claims for Medicaid payment and illegally provides that the costs of physical therapy services be included in the calculation of the nursing facility's Medicaid per diem rate. Also, plaintiff argues that Virginia Plan Amendment No. 90–29, approved by the Secretary effective January 1, 1991, unlawfully limits the Commonwealth's "cost-sharing" in Medicare "Part B" services for "Qualified Medicare Beneficiaries" ("QMBs") to the reimbursement level established by Medicaid. Plaintiff maintains that Virginia is legally obligated to pay the entire difference for

services to QMBs rather than the often lesser amount established by Medicaid. Before addressing in detail the effect of these enactments, and their viability under statutory authority, a brief discussion of the Medicare/Medicaid scheme is appropriate.

The Medicare Act is generally divided into two parts. Under "Part A," the federal government provides people who are 65 years of age and older and certain disabled individuals with an inpatient hospital insurance plan. 42 U.S.C. §§ 1395c–1395i–4. In addition, "Part B" of the Medicare Act provides that people who are eligible for Medicare may voluntarily obtain supplementary insurance for other medical care, including hospital outpatient services and other services that are generally not covered under Part A. Part B of the Medicare statute is involved in this action.

In order to be covered by Part B, a Medicare-eligible person must pay insurance premiums. Further, Part B obligates the federal government to pay 80% of the "reasonable costs" of outpatient hospital services and 80% of "reasonable charges" for physician services rendered to the insured. The remaining 20% of the reasonable costs and charges, the "coinsurance" amount, and the annual deductible are paid by the Medicare patients themselves.

The Medicaid Act, as opposed to the Medicare Act, provides for a joint federal and state funded system which subsidizes medical care for the needy, regardless of age. States participating in Medicaid must propose a plan which must be approved by the Secre-

---

health care services to dual eligibles and other QMBs.

**2.** 42 U.S.C. §§ 1395 *et seq.* ("the Medicare Act"), 42 U.S.C. §§ 1396 *et seq.* ("the Medicaid Act").

**3.** Plan Amendment 88–08 provides:

The State Board of Medical Assistance Services shall develop amendments to the State Plan for Medical Assistance and seek the Health Care Financing Administrations's approval to provide that: ... [in paragraph 5.] Effective on and after July 1, 1988, reimbursement will not be made directly to physical therapy providers for physical therapy services provided to Medicaid patients residing in long term care facilities that are subject to prospective reim-

bursement. Reimbursement for these services is and will continue to be included within the allowable operating cost ceilings as established under Virginia's prospective payment system. Prospective operating rates for such long term care facilities that have not previously included such costs in their cost reports shall not be adjusted for physical therapy service costs until actual allowable costs incurred for these services are reflected in cost reports for fiscal years beginning subsequent to July 1, 1988. Costs incurred as a result of this change will not be considered justification for approving a change to any providers cost reporting period ...

The "direct billing" prohibition was extended by Plan Amendment No. 90–16 to cover occupational therapy and speech therapy services.

tary as conforming with federal requirements. 42 U.S.C. §§ 1396a(a) and 1396a(b). The state plan must include a schedule of payment rates which the state designates or the services that a Medicaid patient might seek. Once the Secretary approves a state's plan, the federal government will assist the state in its reimbursement program with Federal Medicaid funds. The health care providers who treat Medicaid patients must agree to accept the Medicaid rate and not ask the patient to pay any money beyond that point.

An additional component of the Medicare Act, and one significant to the instant action, is the QMB provision. The authors of the Medicare Act recognized that the cost of enrolling in the optional Part B program (the 20% coinsurance and the annual deductible) might prohibit certain poor Medicare-eligibles (those who are eligible for Medicaid as well) from receiving Part B services. Accordingly, the Act provided for states to enroll the poorest of the Medicare beneficiaries, i.e. those "dually eligible" for Medicaid, in the Part B program by entering into a "buy-in" agreement with the Secretary and paying the premiums on their behalf. In addition, the state Medicaid programs were to pay Medicare deductibles and coinsurance amounts to the extent that the individual could not.

In 1989, Congress expanded this protection for the elderly poor and provided that state Medicaid programs were required to pay Medicare cost-sharing on behalf of QMBs. Omnibus Budget Reconciliation Act of 1986 ("OBRA '86"), Pub.L. No. 99–509, § 9403, 100 Stat. 1874, 2053 (1986). QMBs were defined to include all medicare-eligible individuals with incomes below federal poverty levels. Thus, "QMB" includes those who are "dually eligible" as well as other poor Medicare beneficiaries. 42 U.S.C. § 1396a(a)(10)(E). In this case, Plaintiff challenges both the *mechanics* of payments made by the state for services rendered to QMBs as well as the *rate* at which the state

reimburses therapy providers for their services to QMBs.

When therapy services are rendered to a Medicare patient who is also eligible for Medicaid, the Medicare program pays the therapy provider 80% of the reasonable cost for these services. The Commonwealth, plaintiff argues, is liable for the entire 20% coinsurance when such services are provided to a QMB. However, plaintiff argues, pursuant to Plan Amendment 88–08, the Commonwealth no longer pays the 20% Part B coinsurance for therapy services furnished to QMBs in nursing facilities. Plaintiff has no quarrel with the direct billing amendments to the extent they prohibit the submission of separate Medicaid claims furnished to Medicaid patients who are not also Medicare-eligible (so-called "pure" Medicaid patients). What plaintiff challenges in this action is the application of the direct billing amendments so as allegedly to eliminate payment of Medicare Part B cost-sharing to rehabilitation agencies for therapy services furnished to Medicare patients: the dual eligibles and other QMBs. Under the Medicare Act, plaintiff contends, the Commonwealth must pay the deductible and 20% Medicare coinsurance to the provider for all QMBs.

Plaintiff also challenges Virginia Plan Amendment 90–29 which provides for payment by the Commonwealth of Medicare Part B cost-sharing for QMBs only to the extent that the amount paid by the Commonwealth, plus the 80% Medicare payment, does not exceed the level of reimbursement established for such service by the Medicaid program. In short, plaintiff complains that when the Medicaid rate for a service is lower than the Medicare-approved reasonable cost or charge, the Commonwealth will limit payment of the Medicare cost-sharing so that the total payment to the provider does not exceed the Medicaid rate. Further, plaintiff states that if the Medicaid rate is lower than the 80% Medicare payment, the Commonwealth pays no cost-sharing.[4]

4. Plaintiff offers the following example: If the Medicare-approved reasonable cost or charge is $100, Medicare will pay $80 (80% of $100). If the Medicaid rate for that service is $90, the Commonwealth will pay only $10 of the $20 Medicare coinsurance amount. If the Medicaid rate is lower than $80, the Commonwealth will pay no Medicare coinsurance.

This memorandum will first address the threshold arguments regarding standing, failure to state a claim, and statute of limitations raised by defendants in their respective motions. Next, the Court will discuss the legality of the direct billing prohibition and the Medicaid rate limitation under the Medicare and Medicaid Acts.

### Discussion

█ The Director first asserts that the Association lacks standing to bring this action. The Director argues that, under *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) and *Hunt v. Washington State Apples Advert. Comm'r*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), in order to have standing an association must show that its members would otherwise have standing to sue in their own right, that the interests the association seeks to protect are germane to the organization's purpose, and that neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt*, 432 U.S. at 343, 97 S.Ct. at 2441.

The Association, defendants argue, has failed to satisfy each of the requirements for associational standing. Defendants maintain that there is no allegation in this case that any rehabilitation agency has made a claim for payment, either to a nursing facility, a third-party payer, or to the Medicaid program. As such, defendant avers, there has been no injury. The Director adds that, in order to determine whether the Association members were paid properly, it would be necessary to examine each and every contract between a rehabilitation agency and a nursing facility. Relying on *Kansas Health Care Ass'n v. Kansas Dep't of Social & Rehab. Servs.*, 958 F.2d 1018 (10th Cir.1992), the Director contends that this case requires the participation of individual entities not before the Court.

Plaintiff submits that the Director mischaracterizes the Association's claim. Plaintiff asserts that its claim is that the Commonwealth is required by statute to pay Medicare cost-sharing to rehabilitation agencies, not that nursing facilities are so required pursuant to statute or otherwise. The mere fact that the state has announced its policy not to pay rehabilitation agencies the cost-sharing amounts creates sufficient injury, regardless of whether individual agencies have submitted claims contrary to that policy. Plaintiff, citing *National Ass'n of Rehabilitation Facilities, Inc. v. Schweiker*, 550 F.Supp. 357 (D.D.C.1982), argues that its organizational purposes clearly confer standing to bring the instant suit. Plaintiff adds that no individualized proof is required to determine whether federal law requires states to pay Medicare cost-sharing.

On the issue of standing, the Court finds that plaintiff has satisfied the requirements set out in *Warth* and *Hunt*. In *Hunt*, the Court commented, "If the Commission were a voluntary membership organization—a typical trade association—its standing to bring this action as the representative of its constituents would be clear under prior decisions of this Court." *Hunt*, 432 U.S. at 342, 97 S.Ct. at 2441. The Court cited *Warth*, stating "Even in the absence of injury to itself, an association may have standing solely as the representative of its members ..." *Id.*, 422 U.S. at 511, 95 S.Ct. at 2211. The Court is satisfied that plaintiff's claim that the Commonwealth's amendments to its State Plan violate federal law brings this action within the standing requirements articulated in *Hunt*. *See National Ass'n of Rehabilitation, Etc. v. Schweiker*, 550 F.Supp. 357, 365 (D.D.C.1982).

█ The Director also asserts that plaintiff has failed to state a claim upon which relief can be granted. The Director argues that 42 U.S.C. § 1983,[5] under which the Association brings this claim, cannot apply in this case because neither the Medicare Act

---

**5.** Section 1983 provides, in pertinent part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.
42 U.S.C. § 1983.

nor the Medicaid Act creates any enforceable right regarding direct billing or the Medicaid rate limitation. Defendant cites *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) for the three factors relevant to a § 1983 claim.

> First, is the plaintiff one of the class for whose *especial* benefit the statute was enacted, ... that is does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

*Id.* at 78, 95 S.Ct. at 2087 (citations omitted). The Director argues that plaintiff cannot satisfy any of the requirements to state a claim under § 1983.

Plaintiff contends that the right it seeks to enforce, the statutory right to state payment of Medicare cost-sharing, is enforceable under § 1983. Plaintiff argues that the factors in *Cort* relate to the question of whether a private right of action can be implied from a statute, not whether a statute creates an enforceable right under § 1983. According to plaintiff, the operative inquiry is whether "the provision in question was intend[ed] to benefit the putative plaintiff." *Wilder v. Virginia Hospital Association*, 496 U.S. 498, 508, 110 S.Ct. 2510, 2516, 110 L.Ed.2d 455 (1990). If the statute reflects a binding obligation on the governmental unit as opposed to merely a "congressional preference" for a certain kind of conduct, then the statute creates an enforceable right under § 1983. In addition, the interest asserted cannot be "too vague and amorphous" such that it is "beyond the competency of the judiciary to enforce." *Id.* Under *Wilder*, plaintiff submits, § 1983 is a proper vehicle for enforcing the statutory provisions requiring states to pay Medicare cost-sharing for QMBs.

The Court has concluded that plaintiff has stated a claim for which relief can be granted under § 1983. The QMB cost-sharing provision, § 1396a(a)(10)(E) creates a right that is "sufficiently specific and definite to qualify as [an] enforceable righ[t] under *Pennhurst* and § 1983 [and was] not ... beyond the compe-

tence of the judiciary to enforce." *Wilder*, 496 U.S. at 512, 110 S.Ct. at 2519, quoting *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 432, 107 S.Ct. 766, 775, 93 L.Ed.2d 781 (1987). Whereas providers in *Wilder* had enforceable rights under § 1983 to challenge the adequacy of Medicaid rates under § 1396a(a)(13)(A), so too do providers have enforceable rights to challenge a state's obligations under the cost-sharing provisions in § (a)(10)(E).

■ The Director contends that, to the extent the Association states a § 1983 claim, it is time barred. Relying on *United Steelworkers v. Dalton*, 544 F.Supp. 291, 296 (E.D.Va.1982), defendant argues that suits brought pursuant to § 1983 are governed by the statute of limitations borrowed from state law. As such, the Director submits, the Virginia two-year statute of limitations for personal actions governs § 1983 claims. Va. Code Ann. § 8.01–243 (1992 Repl.Vol.). Federal law, defendant argues, governs the time of accrual and establishes that time at the point when the plaintiff knew, or had reason to know, of the injury which forms the basis of the action. *See Bireline v. Seagondollar*, 567 F.2d 260 (4th Cir.1977). The Association's claims based on the direct billing amendments and the Medicaid rate limitation amendment both were brought more than two years after the respective enactments. Therefore, defendant contends, the claims based thereon must be dismissed for failure to timely file.

Plaintiff argues that its claims are not time barred due to the continuing nature of the challenged actions. Since the state continues to apply the payment limitations, and since the Secretary's approval persists, the violations, plaintiff correctly asserts, can only be considered continuing. Plaintiff cites *National Advertising Co. v. City of Raleigh*, 947 F.2d 1158 (4th Cir.1991) stating, "With respect to statutory or regulatory challenges, we have previously found a continuing violation where regulations continued to be applied to persons within the statutory limitations period." *Id.* at 1167, citing *Virginia Hospital Ass'n v. Baliles*, 868 F.2d 653, 663 (4th Cir.1989), *aff'd sub nom. Wilder v. Vir-*

ginia Hospital Ass'n, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990).

On the basis of *National Advertising* and *Baliles,* the Court finds that plaintiff's claims are not time barred. In *Baliles,* the plaintiff's challenge to Virginia's procedures for reimbursing hospitals for the cost of treating Medicaid patients was brought four years after the adoption of the procedures. The court concluded that the claim "was not barred by Virginia's applicable two-year statute of limitations." *Id.* at 1167. Rather than focusing on defendant's initial actions, plaintiff in this case, like plaintiff in *Baliles,* challenges the continuing application of an allegedly unlawful policy. Due to the continuing nature of the alleged harm, the Court will deny defendants' motions on the statute of limitations bar.

■ The Director's final threshold challenge alleges that the Association's claim is barred by the Eleventh Amendment to the United States Constitution.[6] Despite the exception to Eleventh Amendment immunity for suits that charge state officials with violations of federal law and request prospective relief, as recognized in *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), defendant asserts that this action is nonetheless constitutionally barred. Citing *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974), defendant argues that when a claim is in essence one for recovery of money from the state, and individual officials are nominal defendants, the action is barred by the Eleventh Amendment. Plaintiff's claim, defendant argues, is precisely the type of claim barred on Eleventh Amendment grounds by *Edelman.*

Plaintiff, on the other hand, points to the fact that it does not seek retroactive money damages barred by the Eleventh Amendment, but rather prospective injunctive relief and a declaratory judgment. Under *Edelman,* plaintiff asserts, a federal court may grant prospective injunctive relief against unlawful state action even where the necessary effect of such relief would result in future substantial payments of such state funds.

Defendant's reliance on *Edelman* in support of an alleged Eleventh Amendment bar is, in this instance, misplaced. The *Edelman* Court held that "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief ... and may not include a retroactive award which requires the payment of funds from the state." *Id.* at 677, 94 S.Ct. at 1362. The relief plaintiff seeks, therefore, is permissible under the Eleventh Amendment.

In its substantive claims plaintiff asserts that the Commonwealth's actions, and the Secretary's approval, regarding the prohibition on direct billing and the Medicaid rate limitation violate both the Medicare Act and the Medicaid Act. Plaintiff argues that the Medicare Act requires that providers of Medicare Part B services be paid their full reasonable costs and charges by means of the combined Medicare 80% payment and the cost-sharing amounts. Plaintiff maintains that this requirement applies fully in the case of all QMBs, and the Commonwealth's payment of cost-sharing only up to the Medicaid rate as well as its refusal to make payments directly to providers of therapy services furnished to QMBs violate the Medicare Act. Similarly, plaintiff contends, the Medicaid Act requires payment of Medicare Part B cost-sharing in full, and that such payments be made directly to providers of therapy services furnished to QMBs.

■ Unquestionably, it is a fundamental precept of the Medicare Act that providers are entitled to recover their reasonable costs or charges for providing services, including Part B services, to all individuals eligible for Medicare benefits. The Medicare program, plaintiff contends, must pay 80% of the Medicare-approved amount and providers may charge Medicare beneficiaries or other persons the cost-sharing amounts. In support of its claim for full reimbursement, plaintiff

---

**6.** The Eleventh Amendment states:
   The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.
   U.S. Const. amend. XI.

points to the fact that the Medicare Act expressly provides:

> A provider of services may charge such individual or other person (i) the amount of any deduction or coinsurance amount imposed pursuant to ... section 1395*l*(b) ... and (ii) an amount equal to 20 per centum of the reasonable charges for such items and services ... for which payment is made under Part B ...

42 U.S.C. § 1395cc(a)(2)(A). Further, plaintiff cites *New York City Health and Hospitals Corp. v. Perales,* 954 F.2d 854, 858 (2d Cir.1992) for the proposition that "there is nowhere articulated in the Medicare Act or regulations an exception for dual eligibles or QMBs or any limitation on providers express statutory right to recover their full reasonable costs or charges." *Id.* In *Perales,* the Court of Appeals for the Second Circuit invalidated a New York Regulation and Plan Amendment that limited the state's cost-sharing contribution to the Medicaid rate for dual eligibles and other QMBs. The federal government in *Perales* took the position that dual eligibles and other QMBs were "primarily Medicaid patients" to whom the Medicare Act provisions entitling providers to reasonable costs and charges do not apply.

Plaintiff notes that the Medicaid rate limitation in Virginia Plan Amendment 90–29 is virtually identical to the New York Plan Amendment invalidated in *Perales.* Moreover, plaintiff asserts that the Secretary has acknowledged that at least "pure QMBs," i.e. those not dually eligible, cannot be deemed Medicaid patients for purposes of the direct billing limitations.[7] Any distinction the Secretary may draw between "pure QMBs" and dual eligibles, plaintiff asserts, cannot be reconciled with the Medicare Act or *Perales.*

■ With respect to the legality under the Medicare Act of the direct billing prohibition, *Perales* establishes that all state limitations on providers' rights to recover their reasonable costs and charges for furnishing services to Medicare-eligible patients, including dual eligibles and other QMBs, are unlawful. Plaintiff points to Medicare Regulation 42 C.F.R. § 410.150(a)(1), which provides that "any [Part B] enrollee is ... entitled to have payment made" under Part B "to a ... rehabilitation agency on the individual's behalf for outpatient physical therapy or speech pathology services furnished by the ... agency ..." *Id.* at § 410.150(b)(7). Under *Perales,* plaintiff argues, all Medicare beneficiaries must be treated uniformly, and no one group may be considered "primarily Medicaid."

■ Further, the Court is of the view that the Amendments violate the Medicaid Act provisions applicable to QMBs. The Medicaid Act requires that a state plan provide "For making medical assistance available for medicare cost-sharing ... for qualified medicare beneficiaries." Under § 1396d(p)(1) QMBs are defined to include all individuals entitled to Part A benefits with incomes below certain federal poverty levels. Plaintiff notes as well that "cost-sharing" is defined as including all Medicare cost-sharing amounts. These amounts include premiums, coinsurance, deductibles, and

> the difference between the amount that is paid under section 1395*l*(a) [*i.e.* 80% of the reasonable costs and charges for covered Part B services] and the amount that would be paid under such section if any

---

7. In a letter to one of plaintiff's members dated July 16, 1992, the Secretary stated:

> Some Medicare beneficiaries who meet certain income and resource tests may qualify for Medicaid as qualified Medicare beneficiaries (QMBs). Each state sets its own guidelines for who qualifies for this assistance. Under this program, state governments assist qualified Medicare beneficiaries by paying the monthly Medicare premiums. If a nursing home resident is eligible as a QMB only, and is not also eligible for payment for Medicaid State plan services, it is immaterial whether the State plan considers the Medicare Part B service as part of the per diem under Medicaid. States

are required to pay for the Medicare Part A and Part B deductibles and coinsurance for all Medicare services whether or not the services are covered under the Medicaid State plan. This means that if Medicare considers physical therapy separately for payment, the state must also consider the physical therapy separately for Medicare coinsurance purposes for QMBs. With respect to dually eligible QMBs, the Secretary stated:

> Unlike the Medicare program, a state has the latitude to require that therapy services be considered an inpatient benefit and included in the payments made to the NF [nursing facility].

reference to '80 percent' therein were deemed a reference to '100 percent.'

§ 1396d(p)(3). Plaintiff contends that the Commonwealth's practice of paying Medicare cost-sharing for Part B services to QMBs only to the extent the cost-sharing, plus the 80% Medicare payment, do not exceed the Medicaid rate conflicts with the plain language of § 1396a(a)(10)(E).[8] In invalidating the New York Medicaid rate limitation, the *Perales* court stated, "It is counter-intuitive that a statute requiring Medicaid funds to be made available for [Medicare] cost-sharing only to the extent of the Medicaid scheduled rates would not specify that qualification expressly." *Id.* at 859. Accordingly, plaintiff asserts, the Commonwealth cannot limit its cost-sharing obligation by paying the difference between 80% and the Medicaid rate.

■ Finally, plaintiff maintains that, not only is it not factually correct to conclude that the Commonwealth includes the coinsurance amounts in the Medicaid per diem payments to nursing facilities, it is unlawful under the Medicaid Act to make Part B cost-sharing payments in any way other than directly to the therapy providers. Plaintiff argues that the Secretary's distinction between "pure" QMBs and dual eligibles for purposes of direct billing simply exposes the fact that states are required to pay Medicare cost-sharing directly to providers of Part B services. When Congress eliminated the distinction between dual eligibles and other QMBs in OBRA 1986, plaintiff contends, it required payment in full for all QMBs. Additional amendments in 1989, P.L. 100–360, § 301(a)(1), 102 Stat. 683, 748, further support the Commonwealth's obligation to make direct payments to providers furnishing Part B services to all QMBs. The Commonwealth cannot, plaintiff asserts, discharge its statutory duty to make direct payments to therapy providers by making payments to the nursing facility, an entity under no legal obligation to remit payment to the provider of service.

Both the Secretary and the Director contend that nothing in either the Medicare Act or the Medicaid Act speaks to the issue of to whom payment of Medicare Part B coinsurance and deductibles must be made. Plaintiff's members, defendants assert, have no statutory right to direct payment. The direct billing prohibition, the Director argues, is the lawful outgrowth of steps taken by the Commonwealth to avoid double billing abuses in the past by therapy providers. By shifting the payment scheme from direct payment to payment of the therapy providers through the nursing facility's per diem rate, the Director explains, the Commonwealth avoided paying for medically unnecessary services, as required by § 1396a(a)(30)(A).

The Secretary and the Director both submit that, there being no specific language in either Act requiring direct payment to therapy providers for Part B services rendered to QMBs, the gravamen of plaintiff's complaint concerns the business arrangements the rehabilitation facilities have made with nursing facility providers. The rehabilitation facilities are free, defendants contend, to contract with nursing facilities and be paid the equivalent of Medicaid cost sharing. Perhaps more importantly, the Director asserts, no entity, including rehabilitation services providers, has a right to be a Medicaid provider, citing *Oberlander v. Perales,* 740 F.2d 116 (2d Cir. 1984). Defendants contend that whether rehabilitation agencies chose to provide services to nursing facilities under contracts that waive any entitlement to amounts equal to Medicare cost-sharing is a matter of private contract and does not implicate a federal question at all.

Further, the Director contends that the prospective payment rate established for nursing facilities clearly results in payment by Medicaid to the rehabilitation agency for Part B services. Defendants rely on *Haynes Ambulance Service, Inc. v. Alabama,* 820 F.Supp. 590 (M.D.Ala.1993), in which the court stated:

---

**8.** 42 U.S.C. § 1396a(a)(10)(E) requires that "[a] State plan for medical assistance [Medicaid] must ... provide ...

    for making medical assistance available for medicare cost-sharing (as defined in section

1396d(p)(3) of this title) for qualified medicare beneficiaries described in section 1396d(p)(1) ..."

Nothing in the Medicaid or Medicare statutes furnishes any evidence that Congress ever focused on what percentage of "reasonable" Part B provider costs should be borne by the states for QMBs. Although Congress expressly mandated that the State pay full reasonable costs for Part A . . . nowhere in the statute or accompanying legislation is there language decreeing that the states pick up the tab for those obtaining Part B outpatient services.

*Id.* at 593.

The Secretary argues that plaintiff's reading of the July 16, 1992 letter regarding payment of cost-sharing amounts directly to the provider for "pure" QMBs as opposed to dual eligibles is erroneous. Since "pure" QMBs are non-Medicaid-eligible individuals, the Secretary explains that the per diem rates do not apply to them. Moreover, the Secretary asserts that nothing in the letter suggests that it is her position that § 1396a(a)(10)(E) requires a certain payment procedure for "pure" QMBs or any other QMBs. The Secretary also contends that plaintiff has no right of action against her under the Supremacy Clause and the Fourteenth Amendment, that the Medicaid Act does not provide a private right of action, *Michigan Hospital Ass'n v. Department of Social Servs.*, 738 F.Supp. 1080 (W.D.Mich. 1990), and that the Medicare Act precludes judicial review except under 42 U.S.C. § 405(g). 42 U.S.C. § 1395ff(b). The Secretary also urges that plaintiff's claims are not reviewable under the Administrative Procedure Act. 5 U.S.C. § 704.

Regarding plaintiff's argument that the Commonwealth is prohibited from reimbursing providers under the Medicaid rate, both defendants contend that §§ 1396a(a) and 1396a(n) specifically permit the reimbursement scheme of which plaintiff complains. Section 1396a(a) provides:

[T]he medical assistance made available to a qualified medicare beneficiary . . . shall be limited to medical assistance for medicare cost-sharing . . . subject to the provisions of subsection (n) and section 1916(b) . . .

Section 1396a(n) provides:

In the case of medical assistance furnished under this subchapter for medicare cost-sharing respecting the furnishing of a service or item to a qualified medicare beneficiary, the State plan may provide payment in an amount with respect to the service or item that results in the sum of such payment amount and any amount of payment made under [Medicare] with respect to the service or item exceeding the amount that is otherwise payable under the State plan for the item or service for eligible individuals who are not qualified medicare beneficiaries.

§ 1396a(n). Defendants argue that these two provisions read together reveal that cost-sharing amounts may or may not be paid by the Commonwealth where the total cost of the Medicare services exceeds the total amount that Medicaid would otherwise pay for such services for any other Medicaid-eligible individual. Through 1396a(n), defendants urge, Congress merely sought to assure those states choosing to pay above Medicaid rates that they would receive federal matching dollars. Defendants point to the language "the State plan may provide . . ." in 1396a(n) to support their argument that Congress took a permissive approach in setting cost-sharing rates for services under Part B to QMBs.

The conflicting interpretations of the Medicare and Medicaid Acts as they relate to the Medicaid rate limitation within the Virginia State Plan are specifically addressed in the opposite conclusions reached by the courts in *Perales* and *Haynes.* On the one hand, the court in *Perales* first determined that there is an express statutory right on the part of providers to receive their full reasonable costs or charges. *See Mercy Community Hosp. v. Heckler*, 781 F.2d 1552, 1556–57 (11th Cir.1986) ("Congress has stated that Medicare providers shall be reimbursed for the reasonable costs, both direct and indirect, they incur in rendering health care services to Medicare beneficiaries"). Based on that premise, the court concluded that the New York Regulation that precluded providers who served dual eligibles and QMBs from collecting more than 80% of their reasonable costs or charges violated the Medicare Act. The *Perales* court was not persuaded that

the apparently permissive language of § 1396a(a) allowed cost-sharing only up to the Medicaid rate.

In *Haynes,* however, the court found that the provisions in the Alabama State Plan permitting providers treating QMBs to be paid substantially less than 100% of their "reasonable costs" did not violate statutory authority. The fact that Congress provided that government pay 80% of reasonable provider costs did not, according to the *Haynes* court, necessarily mandate that the states pay the remaining 20% in full. "Of course, Congress could mandate that 100% rather than 80% of a provider's bill be paid by the states in situations where patients do not make any part of the 20% supplemental contribution; it has not done so." *Id.* at 593. The Court in *Haynes* criticized the *Perales* majority for relying on legislative history that relates not to Part B services, but to Part A inpatient hospital care. At bottom, the *Haynes* court adopted the reasoning in Judge Cardamone's dissent to the *Perales* opinion. "A pure Medicare beneficiary is entitled to Part B services because he or she pays the enrollment premiums; a dual eligible [QMB] is entitled to such services because—by virtue of his or her status as a Medicaid recipient—the state pays the enrollment premiums." *Haynes* at 594, citing *Perales,* 954 F.2d at 866 (Cardamone, J., dissenting). That Medicaid pays the enrollment premiums for certain Medicare Part B beneficiaries was sufficient for the *Haynes* court and the *Perales* dissent to condone different treatment of those beneficiaries through cost-sharing up to the Medicaid rate rather than the Medicare rate.[9]

This Court is persuaded by the reasoning in *Perales* and finds that the Medicaid rate limitation violates the Medicare and Medicaid Acts. The buy-in provisions of Medicaid clearly mandate that the state provide "medical assistance . . . for medicare cost-sharing . . . for qualified medicare beneficiaries . . ." § 1396a(a)(10)(E). Cost-sharing is defined

as Part B premiums, deductibles and the difference between the amount paid by Medicare (80%) and "the amount that would be paid under such section if any reference to '80 percent' therein were deemed a reference to '100 percent'." § 1396d(p)(3). Despite the seemingly permissive language in § 1396a(n), "A statute requiring Medicaid funds to be made available for Medicare cost-sharing can only sensibly be read as requiring the funds to be made available to cover *all* Medicare cost-sharing." *Perales* at 859. Plaintiff's motion on the issue of the illegality of the Medicaid rate limitation imposed by Virginia Plan Amendment 90–29 will be granted.

It necessarily follows that the prohibition placed by the *Perales* court on any limitation of therapy providers' right to recover their full reasonable costs or charges must also invalidate the direct billing amendments to the Virginia Plan. As heretofore discussed, the Medicare Act requires that the state pay the coinsurance on behalf of QMBs, payments that would ordinarily be exacted directly from the individual. It cannot be said that Congress contemplated payment to therapy providers indirectly through per diem prospective rates to nursing facilities when it defined cost-sharing as follows:

(3) The term 'medicare cost-sharing' means the following costs incurred with respect to a qualified medicare beneficiary without regard to whether the costs incurred were for items and services for which medical assistance is otherwise available under the plan:

\* \* \* \* \* \*

(D) The difference between the amount that is paid under section 1395*l*(a) of this title and the amount that would be paid under such section if any reference to '80 percent' therein were deemed a reference to '100 percent'.

§ 1396d(p)(3). Clearly, the rehabilitation agencies "incur costs" "with respect to a

---

9. Plaintiff has called to the Court's attention the recent decision in *Pennsylvania Medical Soc'y v. Snider,* No. 1:CV–92–0481 (M.D.Penn. Nov. 2, 1993). In *Snider,* the district court found that Pennsylvania's Medicare cost-sharing scheme for QMBs, a scheme very similar to the rate limita-

tion at issue in the instant case, did not violate the Medicare or Medicaid Acts. The *Snider* court's reasoning essentially echoes that in the *Haynes* decision. This Court declines to follow the *Snider* ruling for the same reasons it finds *Haynes* unpersuasive.

QMB" when they provide therapy services to QMBs in nursing facilities. The cost-sharing, therefore, must be paid directly and without regard to any distinction between "pure" QMBs and dual eligibles. Accordingly, the Court is of the view that it must grant plaintiff's motion on the illegality of the direct billing prohibition.

In conclusion, the buy-in provisions of § 1396a(a) require that Medicaid provide for making medical assistance available for medicare cost-sharing for QMBs. § 1396a(a)(10)(E). Moreover, the language of § 1396d(p)(3) indicates the state's obligation to bring a provider's reimbursement to the full 100% level.

> The apparent meaning of this section is that the states that participate in Medicaid must allocate Medicaid funds to the enrollment of all dual eligibles and QMBs in Part B of Medicare and to the payment of 20% of the reasonable costs or charges along with the annual deductibles incurred in this program.

*Perales* at 859. These sections read together and as interpreted by the *Perales* court lead ineluctably to the conclusion that the Virginia Plan amendments frustrate a provider's right, under the Medicare Act, to collect reasonable costs and charges.

The practical effect of the Virginia Plan Amendments is to reimburse therapy providers less than their reasonable costs and charges solely by virtue of the economic status of the beneficiaries for whom they provide therapy services. "Providers will consequently refrain from treating the most vulnerable of the elderly and disabled, those who are also poor. These groups are the subject of this appeal, and such a result is fundamentally at odds with Congress' vision in enacting the Medicare Act." *Perales* at 859. While the Commonwealth's asserted goal of reducing billing abuses is both worthy and required by statute, it cannot lawfully accomplish this goal by creating two reimbursement systems within the unitary Medicare program.

An appropriate Order will issue.

## ORDER

The Court is in receipt of Plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and Defendants' motions to dismiss or for summary judgment under Federal Rules 12(b) and 56. For the reasons stated in the accompanying Memorandum, and deeming it just and proper so to do, it is hereby ADJUDGED and ORDERED that Plaintiff's motion be and the same is hereby GRANTED. Furthermore, upon due consideration, and deeming it just and proper so to do, it is hereby ADJUDGED and ORDERED that Defendants' motions be and the same are hereby DENIED.

It is accordingly ADJUDGED, DECLARED, AND ORDERED as follows: State Plan Amendments 88–08, 90–16, and the Subsequent Amendments, as applied so as to eliminate direct payment by the Commonwealth of Medicare cost-sharing amounts to rehabilitation agencies for outpatient therapy services furnished to all QMBs, and Amendment 90–29, to the extent that it reduces or eliminates payment by the Commonwealth of the full Medicare cost-sharing amounts for Part B covered services furnished to all QMBs, are unlawful, unconstitutional, and invalid, and the Commonwealth's implementation thereof is unlawful, unconstitutional, and invalid. The Secretary's actions with respect to State Plan Amendments 88–08, 90–16, and the subsequent Amendments, as applied so as to eliminate direct payment by the Commonwealth of Medicare cost-sharing amounts to rehabilitation agencies for outpatient therapy services furnished to all QMBs, and Amendment 90–29, to the extent that it reduces or eliminates payment by the Commonwealth of the full Medicare cost-sharing amounts for Part B covered services furnished to all QMBs, are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, and accordingly are invalid.

It is further ADJUDGED and ORDERED that the Commonwealth Defendant, Bruce U. Kozlowski, his successors, agents, officers, servants, employees and all working in concert therewith be and he and they are hereby permanently enjoined from implementing or

attempting to implement State Plan Amendments 88–08, 90–16, the Subsequent Amendments, and 90–29 to the extent that they are applied so as to eliminate direct and full payment by the Commonwealth of Medicare cost-sharing amounts to rehabilitation agencies for therapy services furnished to all QMBs.

It is further ADJUDGED and ORDERED that the individuals in the immediate preceding paragraph make direct and full payment of Medicare cost-sharing amounts to rehabilitation agencies for therapy services furnished to all QMBs.

Plaintiff shall recover their taxable costs and shall also recover reasonable counsel fees and expenses. The parties are directed to meet and confer in an effort to reach an amicable adjustment of said fees and expenses.

In the event the parties cannot agree, Plaintiff shall within 30 days file appropriate documents under oath specifying what they claim to be entitled to by way of said fees and costs. Defendant is granted fifteen (15) days after receipt of Plaintiff's filings to respond thereto.