ANAHEIM MEMORIAL HOSPITAL, Plaintiff–Appellant,

v.

Donna E. SHALALA, Secretary, Defendant–Appellee.

ANAHEIM MEMORIAL HOSPITAL, Plaintiff–Appellant,

v.

Donna E. SHALALA, Secretary, Defendant–Appellee.

Nos. 96–55724, 96–55796.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1997.

Decided Nov. 26, 1997.

---

Mitchell R. Miller, Attorney at Law and the Law Offices of Jacob N. Segura, Beverly Hills, California, for the plaintiff-appellant.

Gerard Keating, Department of Health and Human Services, Washington, DC, for the defendant-appellee.

Before: REINHARDT and TASHIMA, Circuit Judges, and SHADUR,* District Judge.

TASHIMA, Circuit Judge:

In *French Hosp. Med. Ctr. v. Shalala*, 89 F.3d 1411 (9th Cir.1996) (*"French Hospital"*), we held that the reopening of a Medicare cost report entitles the provider to appeal only the "issue" on which the report had been reopened. On these consolidated appeals, we face the question which logically follows: How broad is the "issue" that was reopened?

## I. BACKGROUND

### A. The Statutory and Regulatory Framework

The Medicare statute, Title XVIII of the Social Security Act, Pub.L. No. 89–97, 79 Stat. 291 (1965) (codified as amended at 42 U.S.C. § 1395 to 1395ccc (1991 & Supp. 1997)), creates a federally funded health insurance program for the elderly and disabled. The statute provides that the Secretary of Health and Human Services (the "Secretary") will reimburse health care providers for services provided to Medicare patients. A hospital may participate in the Medicare program as a provider by entering into a provider agreement with the Secretary. 42 U.S.C. § 1395h; 42 C.F.R. § 421.103 (1996).

Reimbursement to a provider is normally handled by a "fiscal intermediary." 42 U.S.C. § 1395h(a). A provider seeking reimbursement submits an annual cost report to the fiscal intermediary, 42 C.F.R. §§ 413.20(a)-(b) & 413.24(f), which then audits the report, determines the reimbursable amount, and issues an initial Notice of Amount of Medicare Program Reimbursement ("NPR") for the relevant fiscal year. 42 C.F.R. § 405.1803.

During the periods at issue in this case, Medicare paid the lower of a provider's "customary charges" or the "reasonable cost" of furnishing covered services. 42 U.S.C. § 1395f(b)(1). The statute authorizes the Secretary to set up "cost limits" that help define reasonable costs. 42 U.S.C. § 1395x(v)(1)(A). Pursuant to this statutory authorization, the Secretary, acting through the Health Care Financing Administration (the "HCFA"), established cost ceilings called "routine cost limits" ("RCL"). 46 Fed. Reg. 33637, 33639–40 (June 30, 1981) (concerning the fiscal years in question). Providers were not normally reimbursed for costs incurred in excess of the RCL.

The RCL is derived from a number of factors, including: (1) a database consisting of a large set of Medicare cost reports; (2) a market basket index of goods and services purchased by hospitals; (3) determinations of separate labor-related and non-labor components of hospital costs; (4) a hospital wage index; (5) a geographic classification system; (6) inflation factors; (7) cut-off points for determining mean costs; (8) separate adjustments for medical education costs, the cost-of-living in Alaska and Hawaii, and the beginning date of a hospital's cost reporting period; and (9) an upward adjustment for hospitals located in states with lower than the national average of covered days of care ("CDCA factor"). 46 Fed.Reg. 33637, 33639–40 (June 30, 1981); 45 Fed.Reg. 41868–80 (June 20, 1980); 44 Fed.Reg. 31806, 31810 (June 1, 1979). *See also* 42 C.F.R. § 413.30(a)(2), (c)-(f) (describing procedure for deriving the RCL).

After the fiscal intermediary issues an initial NPR, the provider may appeal any aspect of the reimbursement to the Provider Reimbursement Review Board (the "PRRB" or "Board"), if the amount in controversy is at least $10,000 ($50,000 for a group appeal), and if the hearing request is submitted within 180 days of the initial NPR. 42 U.S.C. § 1395oo(a), (b). The PRRB has discretion to extend the 180–day appeal period for good cause if an extension is requested within three years of the initial NPR. 42 C.F.R. § 405.1841(b). If these jurisdictional prerequisites are fulfilled and the PRRB has the authority to decide the matter at issue, 42 C.F.R. § 405.1867, the PRRB may hold a

---

* The Honorable Milton I. Shadur, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

hearing and issue a decision. The Secretary's delegate, the HCFA Administrator (the "Administrator"), may then review the PRRB's decision, either *sua sponte* or upon request. 42 C.F.R. § 405.1875. The Administrator must promptly notify the parties if he intends to review the PRRB's decision, and he must render his final decision within 60 days of the PRRB's decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1875(d) & (g).

The Medicare statute also creates a process known as "expedited judicial review" ("EJR"). If the PRRB decides that it has jurisdiction over an appeal but lacks the authority to decide the controlling question of law, it may grant an EJR. 42 U.S.C. § 1395oo(f)(1). The provider then has 60 days to seek judicial review of the legal issue in question. 42 U.S.C. § 1395oo(f)(1).

If a provider does not timely appeal the initial NPR, its cost report for that fiscal year is considered closed. Under certain circumstances, however, a closed cost report can be reopened. 42 C.F.R. § 405.1885. When an NPR is reopened and a revision is made, that revision is considered "a separate and distinct determination or decision," *i.e.*, it is a new final decision, subject to the appeal rights discussed above. 42 C.F.R. § 405.1889.

### B. *French Hospital*

We first confronted the regulations governing the reopening of an NPR in *French Hospital*, 89 F.3d 1411. In that case, the fiscal intermediary reopened an initial NPR seven years after it was issued in order to reclassify the provider's malpractice insurance costs as an administrative and general cost. *Id.* at 1413. After that reopening, the provider pursued an appeal to the PRRB challenging the RCL formula on the grounds that the wage index in the RCL was flawed and that the CDCA factor was inaccurate. *Id.* at 1414.

We agreed with the Secretary that the PRRB lacked jurisdiction over the provider's appeal. We reasoned that because a revision

in the NPR is a "separate and distinct determination," 42 C.F.R. § 405.1889, a revision must be separated from the initial NPR, and the right of appeal attaches only to the scope of the revision. *Id.* at 1419. This court thus joined the Seventh Circuit in holding that the PRRB has jurisdiction only over those elements of the NPR that are reconsidered by the fiscal intermediary upon reopening. *Id.* (citing *Edgewater Hosp., Inc. v. Bowen*, 857 F.2d 1123, 1134 (7th Cir.1988), *modified*, 866 F.2d 228 (1989)). *Accord Rutland Regional Med. Ctr. v. Sullivan*, 835 F.Supp. 754, 759 (D.Vt.1993); *Albert Einstein Med. Ctr. v. Sullivan*, 830 F.Supp. 846, 849 (E.D.Pa.1992), *aff'd*, 6 F.3d 778 (3d Cir.1993).[1]

We acknowledged in *French Hospital* that, on the facts of that case, the reclassification of malpractice insurance costs after reopening meant that the RCL had to be applied anew, *i.e.*, the cost limits had to be applied to new numbers. *French Hospital*, 89 F.3d at 1421. But we distinguished between an application of the RCL and a reconsideration of it. *Id.* Since neither the RCL itself, nor any component of it, was reconsidered by the fiscal intermediary upon reopening, we held that the PRRB lacked jurisdiction over the provider's appeal. *Id.* at 1422. In sum, a reopening was said to be "issue-specific," *id.* at 1420, and the RCL was not the issue that was reopened.

### C. Factual and Procedural Background

Plaintiff-appellant Anaheim Memorial Hospital ("Anaheim") is a "provider" of medical services under the Medicare statute. Blue Cross of California, the fiscal intermediary, issued an initial NPR for Anaheim for the fiscal year ending September 30, 1981 ("FY 1981") on October 18, 1982, and an initial NPR for the fiscal year ending September 30, 1982 ("FY 1982") on August 26, 1983.

On September 10, 1993, Blue Cross issued a revised NPR, in the wake of HCFA Ruling 89–1, a ruling that required fiscal intermediaries to treat malpractice insurance costs as an administrative and general cost. *French*

---

1. The D.C. Circuit has not yet decided whether a cost item must actually be altered upon reopening to give rise to appeal rights, or whether

reconsideration is sufficient. *HCA Health Serv., Inc. v. Shalala*, 27 F.3d 614, 621 n. 4 (D.C.Cir. 1994). No other circuit has reached the issue.

*Hospital,* 89 F.3d at 1413. That ruling reversed the previous practice of classifying malpractice insurance costs and reinstated the pre–1979 classification. However, this meant that malpractice insurance costs for the affected years were retroactively subject to RCL limits that they had not been subject to before. To comply with *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), which invalidated retroactive cost limits, the Secretary instructed fiscal intermediaries to implement the HCFA Ruling without regard to the RCL. This meant that the RCL was effectively suspended to allow for malpractice insurance cost payments without limitation. None of the methodological components of the RCL was altered by the Secretary.

Thus, when Blue Cross revised Anaheim's NPR, it both reclassified the malpractice insurance costs and partly suspended application of the RCL so that these reclassified costs could be fully reimbursed. In the revised NPR, Blue Cross explicitly stated that the reason for the revision was "to revise the Routine Cost Limit per HCFAR 89–1."

On September 30, 1993, and March 7, 1994, Anaheim filed appeals with the PRRB challenging the CDCA factor of the RCL for FY 1981 and FY 1982, respectively. On April 4, 1995, the PRRB ruled that it had jurisdiction over Anaheim's appeals and granted Anaheim's request for an EJR. Anaheim then filed action No. CV 95–0365 LHM (No. 96–55796 on appeal) in the district court on April 21, 1995, seeking review of the validity of the CDCA factor.

On May 22, 1995, the district court remanded the case to the PRRB for reconsideration of its prior ruling. On September 21, 1995, the PRRB responded that it had jurisdiction because the revised NPR altered the RCL; therefore, the provider had the right to appeal all aspects of the RCL.

On October 20, 1995, the Administrator notified Blue Cross and Anaheim that he would review the PRRB's decision and, on November 16, 1995, he vacated that decision and dismissed Anaheim's appeal.

On January 23, 1996, Anaheim instituted the second of these two cases in district court, No. CV 96–0073 LHM (No. 96–55724 on appeal), when it sought judicial review of the Administrator's November 16 decision. On March 24, 1996, the district court held that the PRRB's April 4, 1995, pre-remand decision was final and that, because the Administrator had not reviewed the decision within 60 days, the PRRB's decision was the final agency decision.

On April 16, 1996, the district court granted the Secretary's motion for summary judgment in No. 96–55796, concluding that the PRRB's jurisdictional decision was an abuse of discretion and contrary to law. The district court reasoned that the NPR had been reopened only on the subject of malpractice insurance costs and that the CDCA factor was not open for appeal. It then dismissed No. 96–55724 for mootness.

We have jurisdiction over both appeals under 28 U.S.C. § 1291, and we affirm.

## II. STANDARD OF REVIEW

We review *de novo* the district court's grant of summary judgment in No. 96–55796, *Mt. Diablo Hosp. v. Shalala,* 3 F.3d 1226, 1230 (9th Cir.1993), as well as the district court's dismissal in No. 96–55724 for mootness. *Arnold & Baker Farms v. United States (In re Arnold & Baker Farms),* 85 F.3d 1415, 1419 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 681, 136 L.Ed.2d 607 (1997).

■ Final agency action is reviewed under the Administrative Procedure Act, 5 U.S.C. § 706(2), and can be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ... [or] without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D). Further, an agency's decision can be upheld only on the basis of the reasoning in that decision. *Vista Hill Found., Inc. v. Heckler,* 767 F.2d 556, 559 (9th Cir.1985).

■ We defer to an agency's construction of a statute, unless that construction is contrary to congressional intent or frustrates congressional policy. *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). We also defer to an

agency's interpretation of its own regulations, "unless it is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994) (citations and internal quotation marks omitted); *Providence Hosp. v. Shalala,* 52 F.3d 213, 216 (9th Cir.1995).

## III. THE FINAL AGENCY DECISION

■ The primary issue on these appeals is whether the PRRB had jurisdiction to hear Anaheim's appeal. If it did, then the district court had jurisdiction to decide the merits of the appeal; if not, the district court did not. In answering this question, we must defer to the agency's interpretation of the applicable statutes and regulations, unless that interpretation is "plainly erroneous." *Thomas Jefferson Univ.,* 512 U.S. at 512, 114 S.Ct. at 2386–87. Thus, the logically antecedent question is: What was the agency's interpretation? The PRRB concluded that it did have jurisdiction and the Administrator concluded that the PRRB did not. The parties disagree as to which of these entities effected the final agency decision.

42 U.S.C. § 1395oo(f)(1) informs us that the PRRB's decision is final unless the Secretary reverses, affirms, or modifies the Board's decision within 60 days. That section also tells us that the provider has only 60 days in which to seek judicial review of the final agency action, *id.,* but exactly when this 60–day limitation period begins to run is somewhat complicated. If the Administrator intends to review the Board's decision, he must notify the parties promptly. 42 C.F.R. § 405.1875(d)(1). Then, the Board's decision ceases to be final, and the Administrator's later decision becomes the final agency action, triggering the 60–day statute of limitations. 42 C.F.R. § 405.1877(a). If the Administrator does not notify the parties promptly that he will review the Board's decision, then the Board's decision was the final decision all along, and the 60–day period dates back to that decision. 42 C.F.R. § 405.1877(b). If the Administrator announces his intention to review the Board's decision, but does not issue his own decision within the next 60 days, this inaction is deemed an affirmance, and the 60–day period begins running 60 days after the PRRB's initial decision. 42 C.F.R. § 405.1877(c).

In the case at bench, the PRRB ruled that it had jurisdiction over Anaheim's appeal on April 4, 1995. Anaheim waited 17 days until it filed an action in district court on April 21, 1995. The district court remanded the case to the PRRB on May 22, 1995, for reconsideration of its earlier ruling. On September 21, 1995, the PRRB again ruled that it had jurisdiction, and the Administrator notified the parties on October 20, 1995, that he intended to review the Board's decision. Finally, on November 16, 1995, the Administrator reversed the Board.

Anaheim and the district court seem to think that the finality of the April 4 decision by the PRRB is the key to resolving this case. The district court concluded that because the Administrator did not alter the April 4 decision at any time in the 60 days following it, the "plain language" of 42 U.S.C. § 1395oo(f)(1) means that that decision was final. Anaheim takes a similar view.

The Secretary makes a number of arguments as to why the April 4 decision was not final when issued, but, more to the point, she observes that whatever finality the April 4 decision had was voided by the district court's May 22 remand. In the May 22 order, the district court discussed two prior agency decisions and compared them with a subsequent amendment to the Provider Reimbursement Manual. The court speculated that the Manual might represent a change in the agency's position, and expressed concern that the Board had ruled in favor of finding jurisdiction over Anaheim's appeal without explicitly considering this possible evolution in the Secretary's position. The district court then remanded to the PRRB for "further consideration" in light of the order. A fair reading of this remand order is that the district court was not asking for merely an *explanation* from the PRRB of its decision, but was also asking the PRRB to *reconsider* it. Indeed, had the PRRB concluded upon remand that it lacked jurisdiction over Anaheim's appeal, we cannot imagine that the district court would have ignored this ruling on the ground that it exceeded the scope of

the remand. Clearly, the PRRB was being told to make its April 4 decision all over again.

Therefore, whatever finality the April 4 decision might have had was wiped out by the remand order, because further agency action was required on remand. The district court seemed to think it was remanding the case "to the PRRB," but there is no such thing as a remand to the PRRB. There is only a remand to the agency. *Cf. Association of American Med. Colleges v. Califano*, 569 F.2d 101, 109 (D.C.Cir.1977) ("Section 1395oo of the Medicare Act exacts an administrative determination as a jurisdictional postulate.") The Board happened to be the entity that reconsidered the April 4 decision upon remand not because the district court sent the case back to the Board, but rather because the Medicare statute decrees that the Board make the agency's initial decision, subject to the Administrator's review. 42 U.S.C. § 1395oo(f)(1). Consequently, the PRRB's post-remand ruling on September 21, that it did indeed have jurisdiction over Anaheim's appeal, was simply another Board decision subject to review by the Administrator. Twenty-nine days after the Board's decision, the Administrator notified the parties that he would review it, thus satisfying the prompt notification requirement of 42 C.F.R. § 405.1875(d)(1). 42 C.F.R. § 405.1877(a) then tells us that the Administrator's November 16, 1995, ruling that the agency did not have jurisdiction was the final agency decision.

In sum, we hold that the Administrator's November 16, 1995, ruling that the PRRB lacked jurisdiction over Anaheim's appeal was the final agency decision.

## IV. THE REOPENING

Anaheim argues that Blue Cross' revision of the NPR permits it to challenge the validity of the CDCA factor in the new NPR. Anaheim concedes that a reopening of the NPR is issue-specific and that the reclassification of malpractice insurance costs in the revised NPR does not let Anaheim appeal the CDCA factor. Indeed, that is the precise holding of *French Hospital*, 89 F.3d 1411. Anaheim's twist on *French Hospital* is that, in this case, we face, not a mechanical reapplication of the RCL, but a conscious decision not to reapply it. The idea is that any change in the way the RCL is applied to the cost report opens up the RCL, and every component within it, to challenge on reopening.

The Administrator was correct, and certainly within the bounds of deference, to reject Anaheim's argument. To reiterate, the RCL is a schedule of cost limits applied to the various categories of costs a provider of hospital services incurs. Numerous factors go into computing the RCL, including geographic variations in wages, inflation, the beginning date of a hospital's cost reporting period, and so on. Indeed, the Secretary's regulations obligate her to consider many factors in deriving the RCL, including the type of services furnished, the geographic area where the services are furnished, the size of the hospital, and the type of patients treated. 42 C.F.R. § 413.30(b). One factor that is used to derive the RCL is the CDCA factor. The CDCA adjustment is premised on the theory that where providers within a state experience less than average lengths of patient stay, without an offsetting increase in admissions, it is reasonable to expect that the shorter lengths of stay are due to a higher intensity of services, which in turn results in higher routine costs.

The RCL is ultimately reduced to one number when the provider is given an NPR, but this one number reflects a multiplicity of issues, many of which are entirely unrelated to one other. Since the jurisdiction of the Board upon the reopening of a cost report extends only to the issue reopened, *French Hospital*, 89 F.3d at 1412, it is entirely reasonable for the Secretary to conclude that reopening a cost report to make the RCL inapplicable to one reclassified cost item does not give the Board jurisdiction to hear a challenge to the CDCA factor, or indeed any component of the RCL.

Indeed, it is worth revisiting *French Hospital* to see why this disposition of the instant case makes sense. The reason why a reopening is issue-specific is that the regula-

tions (entitled "Effect of a Revision") provide:

Where a revision is made in a determination or decision on the amount of program reimbursement after such determination or decision has been reopened ... such revision shall be considered *a separate and distinct determination* or decision to which the provisions of §§ 405.1811, 405.1835, 405.1875 and 405.1877 [the normal administrative appeal procedures] are applicable.

42 C.F.R. § 405.1889 (emphasis added). In other words, when Anaheim asked for the PRRB to review the revised NPR, it could only be asking the PRRB to review the *revisions* to the NPR, not the entire NPR or the RCL.

If Anaheim were allowed to treat the entire RCL as a single, giant issue, a change in the way the RCL is applied to any single cost item would open the entire schedule to challenge. This would defeat the purpose of the statute of limitations on challenges to the initial NPR. *See* 42 U.S.C. § 1395oo(a), (b); 42 C.F.R. § 405.1841(b); *French Hospital,* 89 F.3d at 1420 ("[A]llowing a provider to appeal any issue in a revised NPR would nullify the 180–day deadline for appealing the initial NPR."). Like the litigant in *French Hospital,* Anaheim has already had the opportunity to appeal the CDCA factor and chose not to do to. *Id.* at 1422. Anaheim may not use a reopening of its cost report on an unrelated issue as a back door to walk through the statute of limitations on its appeal of the CDCA factor.

In response, Anaheim cites agency and lower court decisions in which it contends the reopening of the NPR on a specific issue gave the PRRB jurisdiction over the entire scope of the issue reopened, including aspects of that issue not affected by the reopening. *See generally Hampton Gen. Hosp.,* HCFA Administrator Decision March

8, 1989, CCH Medicare & Medicaid Guide ¶ 37,681 (interest expenses); *Hamot Med. Ctr.,* PRRB Case No. 89–1740 (medical education costs and voucher examination); *Henderson Mem'l Hosp.,* PRRB Case No. 92–0953 (depreciation). None of these cases, however, has anything to do with the RCL. It is within the bounds of deference for the Secretary to conclude that interest or depreciation expenses are each a unitary "issue" for purposes of reopening, but that the RCL encompasses many issues. The RCL is more complicated and involves more factors than the issues involved in the cases Anaheim cites.

Similarly, as the Secretary points out, *Selma Hosp. Dist. v. Sullivan,* No. CV–F–91–653 REC (E.D.Cal.1992), cited by Anaheim, illustrates only the difficulty of defining the scope of the reopened "issue." There, the Board and Administrator had initially taken the position that the reopened issue of labor and delivery room costs did not include the allocation of nursing costs between routine costs and labor delivery room costs. After the provider sought judicial review, the Secretary settled the case and stipulated that the appealed costs were within the reopened issue. What exactly this has to do with the RCL is difficult to say, except that the case emphasizes that determining the scope of the reopened issue is a difficult question, requiring judgment, discretion, and some expertise in hospital finance—which is all the more reason why this court should defer to the Secretary. *See Thomas Jefferson Univ.,* 512 U.S. at 512, 114 S.Ct. at 2386–87. Again, it is not unreasonable for the Secretary to treat some issues broadly while also concluding that the RCL is so much broader than other issues that it must be subdivided.[2]

In the end, Anaheim is unable to point to a single agency decision that has treated the RCL as one issue for the purpose of a re-

---

**2.** Appellant also refers this court to *Hoag Mem'l Hosp. Presbyterian v. Sullivan,* No. CV–91–5095–CBM, (C.D.Cal. March 9, 1993). In that case, a group of providers settled a claim against the Secretary involving the CDCA factor of the RCL, and the providers later sought to appeal an adverse decision regarding the wage index. The Secretary defended on the ground that the settlement agreement precluded the appeal because both the wage index and the CDCA are part of the RCL. The Secretary's argument, however, was an interpretation of the settlement agreement and not a contention that, in the absence of any settlement agreement, a reopening on the CDCA factor would also implicate the wage index. Thus, the case simply has nothing to do with Anaheim's position here.

opening. Indeed, this case is extraordinarily similar to *French Hospital* in that there was no alteration of any component of the RCL, but merely a new decision about how to apply (or not to apply) the RCL to certain reclassified malpractice costs. As in *French Hospital,* the fact that the RCL, when reduced to one number, was different in the revised NPR than in the initial NPR does not mean that every issue related to some aspect of the RCL has been "reopened." Accordingly, we defer to the Secretary's position.

## V. EQUITABLE TOLLING

■ Anaheim argues, somewhat vaguely, that the Secretary had for many years intentionally concealed an error in the RCL affecting the CDCA factor and that, but for this concealment, it would have appealed the factor within the required time period. Thus, Anaheim argues that it is entitled to the equitable tolling of the time limit on its PRRB appeal, due to the Secretary's conduct.

Anaheim had presented this argument to the PRRB even before its initial April 4 decision as an alternative basis for jurisdiction. Since the PRRB accepted Anaheim's RCL argument, however, it never reached the question of equitable tolling. In its May 22, 1995, remand order, the district court expressly asked the PRRB to address equitable tolling, but, upon remand, the PRRB again concluded that the RCL argument provided an adequate basis for jurisdiction. Therefore, it once again did not address the equitable tolling issue. Likewise, the Administrator did not discuss equitable tolling when he set aside the PRRB's decision. And when the district court finally ruled against Anaheim, it also did not consider equitable tolling, reasoning that since the PRRB did not rule on this issue, there was no final agency decision to review.

We agree with the district court. Federal courts have jurisdiction over Medicare reimbursement disputes only to the extent provided by 42 U.S.C. § 1395oo. 42 U.S.C. § 1395ii (incorporating 42 U.S.C. § 405(h); *Marin v. HEW, Health Care Financing Agency,* 769 F.2d 590, 592 (9th Cir.1985)). Absent a final agency decision, this court simply has no jurisdiction to "review" Anaheim's claim that equitable tolling permits its appeal. *Id.* Since the Board never resolved the equitable tolling issue, we remand to the Secretary for a final decision on the merits of Anaheim's equitable tolling claim.

## VI. CONCLUSION

We **AFFIRM** the district court's decisions in both cases and **REMAND** to the district court with directions to remand to the Secretary of Health and Human Services for further proceedings consistent with this opinion.