152 F.3d 1132
 58 Soc.Sec.Rep.Ser. 21, 98 Cal. Daily Op. Serv. 6312,
98 Daily Journal D.A.R. 8757
FOOTHILL PRESBYTERIAN HOSPITAL, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary, in her official capacity as
Secretary of the United States Department of
Health and Human Services, Defendant-Appellee.
 No. 97-55335.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 1, 1998.
Decided Aug. 13, 1998.
 
 James M. Gaynor, Jr., McDermott, Will and Emery, Chicago, Illinois, Thomas J. Weiss, Seyfarth, Shaw, Fairweather & Geraldson, Los Angeles, California, for plaintiff-appellant.
 Jeffrey G. Micklos, United States Department of Health and Human Services, Baltimore, Maryland, Gerard Keating, United States Department of Health and Human Services, Washington, DC, for defendant-appellee.
 Appeal from the United States District Court for the Central District of California; David V. Kenyon, District Judge, Presiding. D.C. No. CV 95-4674-KN.
 Before: FLETCHER, D.W. NELSON and SILVERMAN, Circuit Judges.
 SILVERMAN, Circuit Judge:
 
 
 1
 At issue in this case is Foothill Presbyterian Hospital's reimbursement from Medicare for inpatient hospital services for fiscal year 1983. The Hospital argues that the district court erred in holding that its 1992 request for an exception to its 1983 target rate limit under 42 U.S.C. § 1395ww(b)(4)(A) and 42 C.F.R. § 413.40(e) was untimely. Although the Hospital's target rate limit was revised in the second revised notice of program reimbursement ("NPR") in 1991, the revision was based solely on malpractice insurance costs and wholly unrelated to the Hospital's request for an exception due to atypical services. We hold that the atypical services issue had to have been raised within 180 days of the initial NPR, in 1985. Thus, the exception request in 1992 was untimely.
 
 I. Background
 A. Statutory and Regulatory Framework
 
 2
 Under the Medicare statute, 42 U.S.C. §§ 1395 to 1395ccc (1988), the Secretary of Health and Human Services reimburses health care providers for services provided to Medicare patients. Foothill Presbyterian Hospital is a provider of hospital services under the Medicare program. During the period of time relevant in this case, the Medicare statute authorized payment for hospitals based on the lower of the hospital's customary charges or the reasonable cost of providing services to program beneficiaries. 42 U.S.C. § 1395f(b)(1). In Section 101 of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97-248, 96 Stat. 339, Congress limited the rate of increase of hospital reimbursement for the operating costs of inpatient hospital services. 42 U.S.C. § 1395ww(b). The TEFRA rate of increase limit for a hospital is based on a target amount defined as the provider's reasonable costs of inpatient hospital service for the base year. 42 U.S.C. § 1395ww(b)(1)(A)(3)(A). The target amount is increased by a specific percentage in each succeeding cost reporting period. 42 U.S.C. § 1395ww(b)(3)(A), (B). The hospital absorbs some of the cost increases in excess of its target amount and receives a bonus if cost increases are less than or equal to the target amount. 42 U.S.C. § 1395ww(b)(1)(A), (B); 42 C.F.R. § 413.40(d).
 
 
 3
 Providers file cost reports annually with their fiscal intermediary to obtain reimbursement from Medicare. 42 C.F.R. § 413.20. The intermediary audits the report and makes a final determination of the total amount of reimbursement owing by Medicare. The determination is set forth in an initial NPR. 42 C.F.R. §§ 405.1803, 413.20, 413.60. If the provider is dissatisfied with a final determination and the amount in controversy is at least $10,000, it may request a hearing before the Provider Reimbursement Review Board ("PRRB") within 180 days of the final determination. 42 U.S.C. § 1395oo(a); 42 C.F.R. § 413.40(e)(1991).
 
 
 4
 A provider may request an exemption from or an exception to the TEFRA rate of increase limit within 180 days of the NPR "where events beyond the hospital's control or extraordinary circumstances ... create a distortion in the increase in costs for a cost reporting period" or where the Secretary otherwise "deems appropriate." 42 U.S.C. § 1395ww(b)(4)(A); 42 C.F.R. § 413.40(e). After such request, the fiscal intermediary makes a recommendation to the Health Care Finance Administration ("HCFA"), which makes the decision. 42 C.F.R. § 413.40(e)(2), (3). HCFA's decision is subject to administrative and judicial review in accordance with the Medicare statute and regulations. 42 C.F.R. § 413.40(e)(4).
 
 B. Facts
 
 5
 On February 28, 1985, the Hospital's Medicare fiscal intermediary issued its first NPR for the 1983 fiscal year showing that the Hospital's inpatient operating costs exceeded its TEFRA rate of increase limit by $544,392. As a result, the Hospital was not reimbursed $408,294 of its inpatient operating costs by Medicare. The Hospital did not request an adjustment to its TEFRA limit or appeal the NPR.
 
 
 6
 On August 3, 1989, the intermediary issued the first revised NPR for fiscal year 1983. Again, the Hospital did not appeal.
 
 
 7
 On October 21, 1991, the fiscal intermediary issued a second revised NPR for fiscal year 1983 reflecting an adjustment based on HCFA Rule 89-1, which allowed reclassification of malpractice costs as administrative and general expenses in the Hospital's cost report. The revision resulted in an additional payment of $24,941 to the Hospital.
 
 
 8
 On January 16, 1992, within 180 days of the date of the second revised NPR, the Hospital requested an exception pursuant to 42 C.F.R. § 413.40(e) because services provided during fiscal year 1983 were atypical, resulting in increased staffing, routine costs, average length of stays and productive nursing hours per patient discharge as compared to the 1982 base year.
 
 
 9
 The intermediary forwarded the Hospital's request for exception to the HCFA with a recommendation that it approve the exception request. On February 10, 1993, the HCFA denied the request. The HCFA reasoned that because the exception request for atypical services was unrelated to malpractice insurance costs, 42 C.F.R. § 413.40(e)(1) required the Hospital to request the exception for atypical services within 180 days of the date on the initial NPR, rather than within 180 days of the revised NPR.
 
 
 10
 The Hospital appealed to the PRRB on March 8, 1993 arguing that it had filed a timely adjustment request. On March 8, 1995, the PRRB reversed the HCFA decision, holding that the exception request was timely under 42 C.F.R. § 413.40(e) because the regulation did not distinguish between an initial and revised NPR. The PRRB remanded to the HCFA for a determination on the merits.
 
 
 11
 On May 15, 1995, the HCFA Administrator vacated the decision of the PRRB and dismissed the Hospital's appeal. The Administrator held that the PRRB lacked jurisdiction to review the HCFA's dismissal of the Hospital's exception request because any exception request was limited to the specific issues addressed in the revised NPR. This decision is the final decision of the Secretary pursuant to 42 U.S.C. § 1395oo(f).
 
 
 12
 On July 14, 1995, the Hospital appealed the decision to the district court. The district judge granted the Secretary's motion for summary judgment, holding that an adjustment in the NPR resulting from HCFA Rule 89-1 did not entitle the Hospital to make an exception request unrelated to the adjustment made as a result of the October 1991 reopening and that the Hospital's request was untimely. The Hospital now appeals the district court's grant of summary judgment for the Secretary.
 
 II. Standard of Review
 
 13
 This court reviews the district court's grant of summary judgment de novo. Mt. Diablo Hosp. v. Shalala, 3 F.3d 1226, 1230 (9th Cir.1993). In reviewing the Secretary's decision, this court is governed by the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq., which provides that the agency's decision will be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ... [or] unsupported by substantial evidence." 5 U.S.C. § 706(2)(A); French Hosp. Med. Ctr. v. Shalala, 89 F.3d 1411, 1416 (9th Cir.1996).
 
 
 14
 In reviewing an administrative agency's construction of a statute or regulations, we must reject constructions that are contrary to clear congressional intent or that frustrate the policy that Congress sought to implement. French Hosp. Med. Ctr., 89 F.3d at 1416. If a statute or regulation is silent or ambiguous, however, we will defer to the agency's interpretation unless an alternative reading is compelled by the plain language of the regulation or by other indications of the agency's intent at the time it promulgated the regulation. Id.
 
 III. Discussion
 
 15
 The Hospital argues that the plain language of 42 C.F.R. § 413.40(e), as it existed at the time the Hospital made its request, allows it to request an exception within 180 days of a revised NPR. The Secretary responds that § 413.40(e) does not specifically address when a provider may request a TEFRA limit adjustment after a reopening, that its interpretation of § 413.30(e) harmonizes the TEFRA adjustment regulations with the rules on administrative appeals, finality and reopening set forth in 42 C.F.R. §§ 1885 and 1889, and is not inconsistent with the language of the regulation.
 
 
 16
 Although French Hospital and Anaheim Memorial Hospital v. Shalala, 130 F.3d 845 (9th Cir.1997) are not controlling, they provide the framework for deciding this case. The issue in both French Hospital and Anaheim Memorial Hospital was the scope of review by the PRRB in an appeal of routine cost limits. French Hosp. Med. Ctr., 89 F.3d at 1417-20; Anaheim Mem'l Hosp., 130 F.3d at 847. This case concerns the scope of a provider's right to request an exception to a TEFRA limit. The relevant regulations in both French Hospital and Anaheim Memorial Hospital clearly limited the issues appealed in a reopening to the matters at issue in the decision. French Hosp. Med. Ctr., 89 F.3d at 1414-15; Anaheim Mem'l Hosp., 130 F.3d at 851. The relevant regulation in this case is not as clear.
 
 
 17
 The Hospital makes much of the fact that at the time it made its exception request, 42 C.F.R. § 413.40(e) did not distinguish between an original and revised NPR:
 
 
 18
 (e) Hospital requests regarding applicability of the rate-of-increase ceiling-(1) Timing of application. A hospital may request an exemption from or adjustment to, the rate of cost increase ceiling imposed under this section. The hospital's request must be made to its fiscal intermediary no later than 180 days after the date on the intermediary's notice of amount of program reimbursement.
 
 
 19
 42 C.F.R. § 413.40(e) (1991).
 
 
 20
 The regulation has changed since the Hospital requested an exception in 1992. In 1993, the regulation was amended to distinguish between an initial and subsequent NPR, and the regulation now explicitly requires that a hospital's request for an adjustment to the rate-of-increase ceiling be received within 180 days of the date on the initial NPR. 58 Fed.Reg. 46270, 46323 (1993) (codified at 42 C.F.R. pt. 413.40(e)). However, the Secretary has stated that this change was made merely to clarify the regulation. It is apparent that no substantive change was intended. Id.
 
 
 21
 The Secretary interprets the former regulation to allow an adjustment request if filed within 180 days of an initial NPR or a revised NPR, provided that the basis for the adjustment request to the revised NPR is related to the issue in the revised NPR. Because the former regulation is silent on the scope of TEFRA adjustment requests, we defer to the Secretary's interpretation of the regulation. See French Hosp. Med. Ctr., 89 F.3d at 1416. The Secretary's interpretation is not inconsistent with the language of 42 C.F.R. § 413.40(e). Nor is there any evidence in this case that the secretary's interpretation would frustrate clear congressional intent.
 
 
 22
 In addition, the Secretary's interpretation reasonably harmonizes the TEFRA adjustment regulations with the issue-specific reopening regulations set forth in 42 C.F.R. §§ 405.1885(a) and 405.1889. This is not an appeal of a reopening of a cost report, which is governed by 42 C.F.R. § 405.1885 and 1889. Rather, exception requests to TEFRA target rate limits are governed by 42 C.F.R. § 413.40(e). However, these regulations provide guidance for interpreting § 413.40(e). At the time the Secretary made this decision, § 405.1885(a) allowed an appeal of a reopening of a decision "with respect to a finding on matters at issue in such determination or decision."[1] Similarly, § 405.1889 provided that any revision due to a reopening was a "separate and distinct" decision.[2] As we determined in French Hospital and Anaheim Memorial Hospital, these regulations clearly limited a hospital's right to appeal a reopening decision to the specific issues reopened and addressed in a second revised NPR. French Hosp. Med. Ctr., 89 F.3d at 1414-15; Anaheim Mem'l Hosp., 130 F.3d at 851. The Secretary's interpretation of § 413.40(e) to limit exception requests to the issues considered in the revised NPR is consistent with the issue-specific requirements in these regulations and promotes finality. If providers were allowed to raise any exception request, whether or not it was relevant to the issues in the TEFRA adjustment, no decision would ever be final.
 
 
 23
 Based on the Secretary's reasonable interpretation of the regulations, the atypical services issues were final in 1985 when the Hospital failed to request an adjustment within 180 days of the initial NPR and could not be raised following the 1991 reopening based on malpractice costs. Thus, the request for an exception based on atypical services was untimely.
 
 
 24
 The Hospital argues that the Secretary's interpretation of 413.40(e) would foreclose any review of HCFA decisions to deny TEFRA target rate limit exception requests. However, this argument is without merit because the Secretary's interpretation does not foreclose the appeal of any properly filed target rate limit exception requests. Rather, the Secretary's interpretation of the regulation limits the exception requests to the issues raised in the reopening. Any issue raised in the reopening can be reviewed on administrative and judicial review. Any other issues can be appealed from the original NPR.
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 The regulation provided:
 Section 405.1885 Reopening a determination decision.
 (a) A determination of an intermediary, a decision by a hearing officer or panel of hearing officers, a decision by the Board, or a decision of the Secretary may be reopened with respect to findings on matters at issue in such determination or decision, by such intermediary officer or panel of hearing officers, Board, or Secretary, as the case may be, either on motion of such intermediary officer or panel of hearing officers, Board, or Secretary, or on the motion of the provider affected by such determination or decision to revise any matter in issue at any such proceedings. Any such request to reopen must be made within 3 years of the date of the notice of intermediary or Board hearing decision, or where there has been no such decision, any request to reopen must be made within 3 years of the date of notice of the intermediary determination. No such determination or decision may be reopened after such 3-year period except as provided in paragraphs (d) [decision was procured by fraud] and (e) [cost reporting periods ending prior to December 31, 1971 if the reopening action was taken after May 27, 1972] of this section.
 
 
 [42]
 C.F.R. § 405.1885(a)(1991)(emphasis added)
 
 
 [2]
 The regulation provided:
 Section 405.1889 Effect of a Revision
 Where a revision is made in a determination or decision on the amount of program reimbursement after such determination or decision has been reopened as provided in § 405.1885, such revision shall be considered a separate and distinct determination or decision to which the provisions of §§ 405.1811, 405.1835, 405.1875 and 405.1877 are applicable.
 
 
 [42]
 C.F.R. § 405.1889 (1991)